**HAYES et al. v. BETTS.**

8 Div. 545.

Supreme Court of Alabama.

Dec. 21, 1933.

Douglass Taylor and John J. Sparkman, both of Huntsville, for appellants.

Watts & White, of Huntsville, for appellee.

KNIGHT, Justice.

Bill by Maud M. Betts against J. Elgie Hayes and William E. Davis to foreclose a mortgage, executed by O. C. Davis, deceased, to Milton H. Lanier and James H. Pride, and for a personal decree against the respondents for any balance that might remain due and owing to complainant—the transferee and owner of said mortgage—on the mortgage indebtedness, including costs and solicitor's fees, after the proceeds derived from the sale of the land had been applied to the payment of said indebtedness.

It is made to appear from the averments of the amended bill that O. C. Davis, in his lifetime, had executed two mortgages on the lands involved in this suit, one to the Federal Land Bank, to secure an indebtedness of $6,000, and the other—a second mortgage in point of lien—to Milton H. Lanier and James H. Pride, to secure an indebtedness of $5,000. The said last-named mortgage by successive transfers became and was the property of the complainant at the time the bill in this cause was filed; and she was the owner of the mortgage and of the indebtedness secured thereby. The amount due and remaining unpaid on said mortgage, at the time the bill was filed, was and is $2,500.

It appears that after the execution of said mortgages, and before the payment of the same, the said O. C. Davis died, and that an administration was had upon his estate; that Frank C. Manning was duly appointed administrator of the decedent's estate; that after his apppointment and qualification, the said Frank C. Manning, as such administrator, filed a petition in the probate court of Madison county, Ala., for the sale of the lands of said decedent for division among the heirs at law of said O. C. Davis. It is to be noted that the petition recited that the lands were subject to the above-mentioned mortgages.

The prayer of the petition was: "Wherefore, your petitioner prays that your honor will authorize him to sell the equities of said heirs in the land above described for cash, and also to sell the personal property above described for cash for the purpose of making a division of said estate among said heirs as provided by law in such cases; and that such proceedings, orders and decrees may be had and made in the premises necessary and proper to accomplish the purpose of this petition according to law."

This petition averred a necessity for the sale rather than a partition of the lands by metes and bounds, and was in all respects regular, and sufficient to invoke the jurisdic-

tion of the court over the subject-matter and parties.

An order of sale of the lands was duly made and entered in the cause by the probate court on the 25th day of October, 1923, after due and proper notice had been given the parties in interest. A guardian ad litem was duly appointed by the court to represent the minor heirs, and he put in issue all the allegations of the complaint. The order of the court contained the following: "It is therefore ordered and decreed by the court that said petition be and it is hereby granted, and that said administrator is hereby authorized and directed to sell all of the right, title, interest, claim and demand held and owned by said heirs in and to the above described land; and that said personal property also be sold at public outcry as the law directs in such cases, after first giving notice of the time, place and terms of sale, together with a description of the property, once a week for three successive weeks in a newspaper published in said county."

It is also made to appear from the bill, as amended, that on the 15th day of November, 1923, the said administrator, proceeding under said decree, sold the said lands to the respondents, and on the 28th day of November, 1923, filed his report in writing in the probate court of Madison county, Ala.; that on December the 11th, 1923, the said court made and entered an order confirming the report and sale of the lands to the respondents and directed a deed to be executed to the purchasers by the administrators.

From the decree of confirmation, we excerpt the following:

"It appearing to the court that said Frank C. Manning as such administrator on the 15th day of November, 1923, within legal hours of sale and in pursuance to the law in such cases and in compliance with the terms and requirements of the decree of this court entered in the premises on the 25th day of October, 1923, proceeded to sell at public outcry in front of the court house of said county, the lands and personal property set forth in said order and hereinafter described; that at said sale the said lands and the personal property was (were) bid off and purchased by Elgie Hayes and W. E. Davis at and for the sum of ten thousand dollars, subject to the payment of a mortgage to the Federal Land Bank of New Orleans, executed by said decedent O. C. Davis, on which there is due the sum of $5,760.00, which mortgage is of record in Mortgage Book 55, page 47, Probate Records of Madison County, Alabama, and subject also to a mortgage executed by said decedent O. C. Davis to Milton H. Lanier and James H. Pride, as shown by mortgage recorded in the Probate Office of Madison County, Alabama, in Mortgage Book 171, page 556, which said mortgage was duly and legally transferred

and assigned, by the said Milton H. Lanier and James H. Pride to Kate M. Pride, on which mortgage there is a balance due of $2500.00, said purchasers having expressly assumed the payment of said two mortgages, and having paid to said Frank C. Manning, as such administrator the sum of $1740 in cash which is the difference in said mortgages and the purchase price of $10,000.00; and

"It appearing to the court that said Frank C. Manning as such administrator has given notice of the time, place and terms of sale and a description of the property to be sold, by advertisement in The Times, a newspaper published in said county, once a week for three successive weeks and that said sale was fairly conducted and was made strictly in pursuance with the former order of this court and that said purchasers have complied with the terms of sale, by paying to said Frank C. Manning as such administrator the full amount of their bid in cash and that said land and personal property for an amount less nor disproportionate to its real value.

"It is ordered, adjudged and decreed by the court that said sale be and is in all things ratified and confirmed.

"Further ordered that said Frank C. Manning as such administrator be and he is hereby authorized and directed to execute and deliver to said purchaser Elgie Hayes and W. E. Davis a deed conveying to them all the right, title and interest which the said decedent O. C. Davis had at the time of his death, in and to the real estate set out in said decree and described as follows" (then follows description of the lands).

It also appears that on the 26th day of January, 1924, the administrator executed a deed to the said purchasers, Hayes and Davis. This deed recites the order of sale, and confirmation of the sale by the court, and direction of the court for the execution of a deed to the purchasers, and said deed further recites:

"Which said real and personal estate was sold by said administrator pursuant to said decree on the 15th day of November, 1923, at public outcry, during the legal hours of sale, to Elgie Hayes and W. E. Davis for the sum of ten thousand dollars; the said real estate was encumbered by two mortgages, one being executed by O. C. Davis to the Federal Land Bank, on which there was a balance due of fifty seven hundred and sixty dollars, and the second mortgage was given by O. C. Davis to Milton H. Lanier and James H. Pride, and by them assigned to Katie M. Pride, and on which there is a balance due of twenty-five hundred dollars—these two items together with seventeen hundred and forty dollars cash making the consideration of ten thousand dollars, this being the highest and best bid for said real and personal property; after the time and place and terms

·of sale, together with a description of said property had been advertised for thirty days in the Huntsville Times, a newspaper published in said county; and

"Whereas, the said Elgie Hayes and W. E. Davis *have assumed the payment of said two mortgages above referred to and have paid in cash the* balance due of seventeen hundred and forty dollars to the administrator; and said court upon the application of said administrator has ordered a conveyance of said land and personal estate to be made by said administrator to the said purchasers thereof according to law. (Italics supplied.)

"Now, therefore, in consideration of the premises and of the full payment to me of the purchase money as aforesaid, the receipt whereof is hereby acknowledged, I, Frank C. Manning, the administrator, as aforesaid, by virtue of the authority vested in me by the aforesaid decree, have sold and conveyed and by these presents do hereby grant, bargain, sell and convey unto said Elgie Hayes and W. E. Davis, all the right, title and interest of the said O. C. Davis, deceased, in and to the following described real and personal property." Then follows description of the property.

It further appears that the deed was delivered to the purchasers, was filed for record, and that the purchasers entered upon and took possession of the lands, and that thereafter the purchasers made default in the payment of the mortgage indebtedness.·

We have set out above more of the facts of the case than we would ordinarily have done, in view of complainant's insistence that she is entitled to a deficiency judgment against the respondents, and in order that our holding and conclusion thereon may be better understood.

Confessedly, the major purpose of the bill is to obtain a decree of foreclosure of her mortgage. The averments of the bill sufficiently show that the complainant's mortgage was duly executed; that ·the indebtedness secured by it still exists, and is past due; that the only parties whose interests are involved in the proceedings are before the court; therefore the bill, as one for foreclosure, contains equity. No grounds of demurrer are directed specifically to this phase of the bill, and the decree of the court overruling the demurrer to the bill as a whole was properly entered. Oden v. King, 216 Ala. 504, 113 So. 609, 54 A. L. R. 1413; Wood v. Estes, 224 Ala. 140, 139 So. 331; Thompson v. Brown, 200 Ala. 382, 384, 76 So. 298; Jasper Land Co. v. Manchester Sawmills, 209 Ala. 446. 96 So. 417.

The next, and the more serious or difficult question presented for our determination is, Was the demurrer properly overruled to that phase of complainant's bill, which seeks a personal judgment against the respondents for any balance that may remain due and ow-ing to the complainant after the proceeds that may be derived from a sale of the lands have been duly applied to the payment of the mortgage? Many grounds of demurrer are directed to this phase of complainant's bill.

It is earnestly urged by appellant that the administrator was without authority in making the sale to take into consideration any mortgages, or liens, that were on the land; that he was only concerned with, and was only authorized to sell, the decedent's equity of redemption; that the probate court, with its limited powers, had jurisdiction only over the land to the extent of the mortgagor's equity of redemption; that the administrator was without authority to make any agreement with the purchasers to discharge the mortgage liens, and that the court of probate was likewise without power to confirm a sale with such agreement annexed; and that under the status of the case, as presented by the bill, there was no consideration for the alleged agreement to discharge the mortgage indebtedness, and no element of estoppel against the respondents, because there is no allegation that complainant ever parted with anything of value, or acted to her prejudice on the strength of the alleged promise.

In the early days of the state, there was some doubt among the profession as to whether a court of probate, then styled orphan's court, under the statutes which provided for the sale of the real estate of deceased persons, could take jurisdiction of the lands of a decedent, which were encumbered by a mortgage, but this court in the case of Perkins' Ex'rs et al. v. Winter's Adm'x et al., 7 Ala. 855, settled the question in the affirmative, with this observation and expository declaration: "In Doe ex dem. Duval's Heirs v. McLoskey, 1 Ala. 734, it was conceded, that the County Court could not decree the sale of the real estate of a deceased person, on which mortgages exist, and provide for their payment from the proceeds, but it was intimated *that a sale of the mortgagor's interest,* under an order of that Court, would confer upon the purchaser the right to redeem. Further reflection has but tended to convince us, that the intimation there made, is well founded. A mortgagor in possession, has not only the equity of redemption, but he has a legal interest which may be sold under execution; and conceding that the Orphans' Court has no equitable jurisdiction, yet the statute cannot, by construction, be limited to cases in which the decedent had an unincumbered legal title. * * * A sale under its decree, places the purchaser in the condition of the heirs of the deceased, and any remedy which they might have adopted, in order to disincumber the land, is open for him."

We fully recognize the fact that in making the sale, under the order of the court, that the court is the vendor, and the administrator is but the agent of the court,

634

designated by law for special purposes and clothed with special trusts. That any representation, agreements, and warranties of the personal representatives are "vanities" since he is only an agent, with law-limited powers. But we are not here dealing with any agreement, representation, or warranty of the agent, but with a contract made by the purchaser with the court, in ·consideration of the court's sale to such purchaser of the decedent's interest in certain property, which was encumbered ·by mortgage. For this interest—whatever it might be—the purchaser *bid* and *agreed to pay* the mortgage indebtedness thereon, and the further sum of $1,740 in cash, making his total bid, in order to become the purchaser at said sale, the sum of $10,000, $8,000 of which was to be applied to the discharge of the liens. This bid, the administrator reported to the court. When the bid was duly reported to the court, the purchaser thenceforth became a quasi party to the proceedings, "acquiring vested rights which entitled· him to protection."

In this connection, this court, in the case of Harduval et al. ·v. Merchants' & Mechanics' Trust & Savings Bank et al., 204 Ala. 187, 86 So. 52, observed: "A purchaser at a judicial sale, that is, one whose offer to purchase is accepted by the officer authorized to make the sale, subject to confirmation by the court in due course; acquires vested rights which are entitled to protection. Thenceforward he is a *quasi party* to the proceeding, is bound by the decree of confirmation or rejection, and subject to the orders of the court with respect thereto. 16 R. C. L. 113, § 81; Haralson v. George, 56 Ala. 295. He may, of course, appeal from any final order or decree injuriously affecting his right as purchaser. Glennon v. Mittenight, 86 Ala. 455, 5 So. 772; Blossom v. Milwaukee, etc., R. Co., 1 Wall. 655, 17 L. Ed. 673. And he is entitled to have the sale confirmed, in the absence of irregularity, misconduct, fraud, mistake, or gross inadequacy of price amounting in itself to fraud. Littell v. Zuntz, 2 Ala. 256, 36 Am. Dec. 415; Cockrell v. Coleman's Adm'r, 55 Ala. 583; Glennon v. Mittenight, 86 Ala. 455, 5 So. 772; Helena Coal Co. v. Sibley, 132 Ala. 561, 32 So. 718."

In 16 R. C. L. page 113, § 81, the rule on the above subject is thus stated: "Bidders and purchasers at a judicial sale under a decretal order make themselves parties in interest to the proceedings for some purposes, they were not parties originally. They subject themselves quoad hoc to the jurisdiction of the court in that suit *as to all matters connected with the sale or relating to them in the character of purchasers.* Accordingly, they have the right to interfere in the proceedings for their own benefit and protection and for the correction· of mistakes, and *to appear, represent their own interests, and claim at the hands of the court such relief* as the rules of equity proceedings entitled them to. They become subject to the future ·orders of the court, are bound as parties by the decree of the court confirming or setting aside the sale, and can be compelled by summary processes of the court, so long as the court's control over the cause and the parties continues, to perform their agreement specifically or otherwise. His inchoate rights· acquired by bidding off the property entitle the purchaser to a hearing upon the question whether the sale shall be subsequently set aside. But being a party to all matters. ·connected with the sale, the *purchaser must take notice of the report of sale, all proceedings with reference thereto, and the confirmation or rejection of the sale.* \* \* \* Bidders and purchasers at judicial sales may at a proper stage of the case appeal from decrees affecting their interests." (Italics supplied.)

 The respondents in this case were before the court, quasi parties, with right to protect their interests, at each successive stage of the proceeding, after the administrator had accepted their bid subject to the confirmation of the court. No protest, objection, or exception was filed by them to the confirmation of the sale, but to the contrary, they made the cash payment required, acquiesced in the confirmation of the sale, and accepted the court's deed, filed it for record, and entered upon their purchase, and for aught appearing to the contrary, have held and enjoyed the fruits of their holding for about nine years. Now they insist that the court was without jurisdiction to make the sale upon the terms solemnly set forth in the decree of ·confirmation and in their deed. A party may be estopped by his acts and conduct, begun and continued through a long period of time from collaterally impeaching or attacking the validity of a judicial sale. 35 Corpus Juris 112.

"When a sale of land is decreed by the court of probate, and is made, and the purchaser complies with its terms, and the sale is confirmed by the court, if the record of the proceedings for sale discloses that the decedent had an interest in the lands descendible to his heirs, and vendible under the decree; or rather does not affirmatively disclose a want of such interest, the purchaser cannot defend against an action for the purchase money, because of the irregularity of the proceedings for the sale, or because of their utter invalidity. We repeat the sale is a judicial sale. The court is in effect the vendor. The maxim caveat emptor applies in all its vigor. The purchaser has full opportunity of ascertaining what is sold, *and by what authority.* He must inquire at his peril. If with the opportunity of ascertaining the regularity or validity of the sale, he does not inquire, or inquires, and suffers the court *without objection* to proceed to a

confirmation of the sale, he estops himself from asserting afterwards its irregularity or invalidity." (Italics supplied.)

■■ If the respondents did not in fact assume, as a part of the purchase price of the lands—the decedent's interest therein—to pay and discharge the mortgages, as recited in the decree of confirmation, and later carried into the deed, the proper course for them would have been to file exceptions in the probate court, timely, and before the order of confirmation, and no doubt upon proper proof and showing, if the report in this respect was untrue, the court would have sustained the exceptions, and have granted respondents proper relief, and, if it had not, these respondents could have appealed to this court for review of the ruling of the probate court. This was not done, but, to the contrary, the respondents sat idly by, allowed the report to be confirmed, and accepted the deed, with the contract provisions as to the payment of the mortgages, and also took possession of the lands under said deed. Respondents cannot be allowed at this late date to repudiate their undertaking.

Nor is there any merit in appellants' contention that the bill fails to aver that the complainant ever parted with anything of value or acted to her prejudice on the promise, and, as we see it, there is no merit in the contention that the deed shows on its face that the alleged promise was nudum factum, and that the purchasers were liable, if liable at all, to the administrator and not to the mortgagees.

■ Nor can the fact that the bill fails to aver that the mortgage indebtedness was duly presented and filed as a claim against the estate of said O. C. Davis exert any influence upon the decision of the question. Confessedly, also, it may be conceded that the heirs were not personally liable for the debt. No one of these facts, nor all combined, can be allowed to absolve the respondents from their contract obligation, knowingly and deliberately assumed by them.

■ The complainant, beneficiary under the contract of respondents, can enforce the obligation, although there was no consideration moving from her to the respondents or to the administrator, in his representative capacity, or to the heirs of O. C. Davis. This conclusion finds abundant support in our recent case of Scott v. Wharton et al., 226 Ala. 601, 148 So. 308, 309, wherein it is held: "The United States Supreme Court and many of the state courts have denied the right of the mortgagee to recover such a judgment [deficiency judgment] against the grantee— this on the theory that while he is entitled to the benefit of all collateral belonging to the grantor, who has become surety for the debt upon the grantees' assumption of it, the grantor himself must have been liable. For a list of the decisions so holding, see note to

case of Corkrell v. Poe et al., 12 A. L. R. 1524. On the other hand, there is a line of decisions which holds that if the purchaser assumes the mortgage he will be liable although his immediate grantor was not liable—this upon the theory that the beneficiary of a new promise made between two other parties for his benefit, the beneficiary may recover upon same, irrespective of any debt due from the promisor to such beneficiary. Corkrell v. Poe et al., 100 Wash. 625, 171 P. 522, 12 A. L. R. 1524 and note. See, also, cases pro and con to note 29 L. R. A. 851, Fry v. Ausman, 29 S. D. 30, 135 N. W. 708, 39 L. R. A. (N. S.) 150, Ann. Cas. 1914C, 842.

"It seems that our Court has for years upheld the right of a beneficiary to enforce a contract made by others for his benefit although there was no consideration moving from him to either of the parties and we are, of course, in line with the case of Corkrell v. Poe et al., supra. Meyerson v. New Idea Hosiery Co., 217 Ala. 153, 115 So. 94, 55 A. L. R. 1231, Fite v. Pearson, 215 Ala. 521, 111 So. 15, and cases there cited."

In the Scott Case, supra, the question was the right of the mortgagee to a judgment against a remote purchaser of the mortgaged property, who assumed the mortgage debt, but whose vendor had not done so, and was in no wise liable therefor. The court held this remote purchaser liable, holding that notwithstanding his grantor, or vendor, had not assumed the mortgages, and was not liable for the mortgage debt, yet he had the right to make a binding contract with Scott, the last purchaser, for the benefit of the mortgagees, and, as between them, there was a valuable consideration.

The foregoing will serve to show that we are at the conclusion that the court below committed no error in overruling the respondents' demurrer to the bill as a whole, or as to any ground of demurrer here argued to that phase or aspect of the bill, which seeks a deficiency judgment against the respondents, and the decree appealed from must be affirmed.

■ There is a ground of demurrer to the bill presenting the statute of limitations, which we have not considered, for in brief of counsel no allusion is made to it, and no argument is advanced in support of it. We must, under our uniform ruling, treat the same as abandoned or waived. Pure Milk Co. v. Salter, 224 Ala. 417, 140 So. 386; Louisville & N. R. Co. v. Holland, 173 Ala. 675, 55 So. 1001, and cases there cited.

It follows that the decree appealed from will be here affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.