195 So. 717

### SPENCE v. SPENCE et al.
### 5 Div. 296.

Supreme Court of Alabama.

March 28, 1940.

Rehearing Denied May 9, 1940.

Walter S. Smith and Walter S. Smith, Jr., both of Birmingham, for appellant.

D. W. Jackson and Chas. S. Moon, both of LaFayette, and E. Herndon Glenn, of Opelika, for appellees.

attorneys' fee to be allowed under the statute. Sections 9319 and 6261, Code.

The bill was filed by Mr. Burns of Jefferson County, who makes no claim to an attorney's fee. It was begun in March, 1934, by some of the heirs and against others, and sought a sale of the farm land, but did not include the residence in LaFayette. There was not much done about it until November 4, 1937, when Josephine Spence intervened as a party complainant, by permission of the court; at that time Jackson had been employed to take the place of Mr. Burns. Josephine Spence had not been a party, but in her intervention she alleged that subsequent to the institution of the suit, she had acquired the interest of her father, Samuel G. Spence, a son of decedent, and a party respondent to the original bill; also that of R. L. Spence, another son of decedent and also a respondent; and that a sale of the land and city property for division was necessary. She then alleged that respondents and cotenants Charles Spence and Morgan Spence have had possession of it all for a long time, and have failed to account to the others for the rents, income and profits, and that they should make an accounting. The prayer included an accounting against them, and a sale for division of both the farm land and the town house, and for an attorney's fee for her solicitor, who was Mr. Smith.

The original bill filed by Mr. Burns had already sought a sale for division of the farm land and an attorney's fee, but had not prayed for an accounting, nor a sale of the town house. The intervener had succeeded to the rights, as she claimed, to some of the respondents in the original bill. The heirs of Judge Spence owned the farm land and town house in the same proportion, and by the same inheritance.

On November 22, 1937, an amended original bill was filed, signed by Mr. Jackson, on behalf of the complainants and included as a complainant Charles A. Spence as guardian for Robert L. Spence, alleged to be a non compos mentis (he was later made a party complainant by next friend).

In an amendment intervener alleged that she had also acquired the interest of Lena Spence and Perry Spence, one of whom (Lena) was an original respondent, and the other (Perry) was an original complainant: that she had also acquired the interest of Lillie Borden, W. G. Spence and Mary Pope, three of the original com-

**FOSTER, Justice.**

This is a suit in equity for the sale of 470 acres of farm land and a residence in LaFayette for division among the cotenants, who are heirs at law of Judge Samuel Spence, who died some fifty years before.

### Attorneys' Fee.

A controversy has arisen between Mr. Smith and Mr. Jackson in respect to the

plainants. She made answer to the amended bill reiterating, more or less, the matters set up in her bill of intervention.

Complainants by Mr. Jackson then made another amendment setting up the mental unsoundness of Robert L. Spence, and his incapacity to execute the deed to Josephine Spence. Much evidence was directed to that issue.

An answer and cross-bill of intervention was filed by Charles and Morgan Spence, and by Charles Spence, as guardian for R. L. Spence, and other respondents in the original bill by separate attorney, disclaiming an effort to bring Charles and Morgan Spence to account, denying the ownership of Josephine Spence of some of the interests she claims, alleging the non compos mentis of Robert L. Spence, denying the claim of her attorney to a fee, joining in a desire to sell for division, and declaring that the only attorney's fee payable should be to the attorneys for the original complainant. Josephine Spence made answer to the cross-bill, acting by her attorney, Mr. Smith.

Charles and Morgan Spence filed plea to the claim for an accounting setting up a discharge in bankruptcy.

The court, by agreement of all parties, ordered a sale of the land, which was confirmed and found, as also agreed to, that a reasonable attorney's fee to be allowed for services beneficial to all the parties was $431.50, and that it should be paid to Mr. Jackson. Mr. Smith claims that it should be paid to him in whole or in part. There was no accounting ordered.

We find nothing in the conduct of Mr. Jackson which subjects him to criticism directed at him in first making R. L. Spence a respondent, and then a complainant, by his guardian or next friend. His interest was not antagonistic to that of the other complainants, who thought it advisable to protect him against the effect of a conveyance he had made to intervener, Josephine Spence. In doing this, he was not representing antagonistic interests. The controversy was mainly to bring Charles and Morgan Spence to account for the rents. He did not represent them, though he and his clients came to the conclusion that Charles and Morgan Spence were not due to restore anything on an accounting. The amount of the attorneys' fee for the joint benefit of all was fixed by stipulation at ten percent. of the proceeds of the sale, and the only issue in that connection was between Mr. Smith, representing the intervener, and Mr. Jackson, representing complainants.

It is claimed that subsequent to the intervention all of the complainants sold their interest to the intervener. This claim is partly based on the fact that an instrument purporting to be signed by D. M. Spence conveyed his interest to Lena Spence, who conveyed it to intervener, and thus some of the complainants had no interest as heirs of D. M. Spence. This instrument is on page 486 of the record, and is in substance and effect a will and not a deed. The trial court so held, and we concur, which we will hereafter more particularly discuss.

So considered, Mr. Jackson continued to represent some of the complainants to the end of the litigation, and represented them all when the amended bill was filed, having taken Mr. Burns' place as their attorney under an agreement antedating the filing of the intervention. The lien for the fee attached before any of the complainants sold to intervener, and was not defeated by such conveyance. And the sale for partition being effected, it has not been defeated at all. Owens v. Bolt, 218 Ala. 344, 118 So. 590.

The original bill did not seek to sell the town house, but that was brought in by Mr. Smith. It sold for $875. The land sold for $3,440, making a total of $4,315, ten percent. of which was allowed as an attorney's fee. Since the house was brought in by Mr. Smith, and was not included in the original suit, that part of the fee computed on the basis of its sale price should be paid to Mr. Smith, so that he should receive $87.50, and Mr. Jackson $344. Section 9319, Code; Matthews v. Lytle, 220 Ala. 78, 124 So. 197.

The services chiefly rendered by Mr. Smith related to the personal rights of his clients, and to the claim for an accounting against Charles and Morgan Spence, for which he is not due to be paid out of this joint fund unless he shall produce a sum for their joint benefit. 14 Am. Jur. 47, section 74; Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184.

### Accounting by Charles and Morgan Spence.

The farm land had been in possession and management of those heirs for fifteen years. The only three living children of

decedent, Robert L. Spence, Janie Spence and Mary Brooks, all very old and feeble, occupied the house in town until the two ladies died, leaving Robert L. Spence, eighty-four years old, as its occupant. No claim is made for compensation for their occupancy. Charles and Morgan Spence managed the land, collected its income, paid the taxes, upkeep, repairs, etc., and furnished some of the necessary supplies to the three old people mentioned, and paid the funeral expenses of the two sisters when they died. This had been going on throughout their possession of the land. Most of the heirs consented to this arrangement, and all acquiesced in it.

Charles and Morgan Spence were adjudged bankrupts in January 1931, and discharged in August 1938, and claim for any liability which occurred prior to January 1931, they are not chargeable.

This claim is applicable only to the extent that a personal judgment is sought against them. McCaw v. Barker, 115 Ala. 543, 22 So. 131; Tarleton v. Goldthwaite's Heirs, 23 Ala. 346, 58 Am.Dec. 296; 27 A. L.R. 268; 14 Am.Jur. 158, section 92. But relief is also available to require them to take into the computation as a part of the amount to be distributed such sum for rents collected as on an accounting may be chargeable to them. That is, to put it into the hotchpot, and deduct it in making distribution of the shares to those two heirs.

The principle recognized to exist is that the amount of rents and income which they have received, and for which they must account, if any, is that much of the common fund for distribution, on the same footing as the proceeds of the sale. It is not so much in the nature of a lien on their share or interest in the land, as an equitable adjustment of the relationship of the cotenants to each other, and is generally said to be subordinate to the claims and liens of third persons. Griffin v. Ayers, 233 Ala. 389, 171 So. 719; 14 Am. Jur. 107, section 40; 7 R.C.L. 836; 27 A. L.R. 235; section 9334, Code. To this equitable adjustment bankruptcy is probably not a defense.

But the court held that they were not due to restore for distribution any sum on account of such rents except for the year 1938, because what they did not expend in the upkeep of the land, including taxes and lawful charges, they used in providing support for these three old and destitute children of decedent, coowners of the property, and that such use was either agreed to or acquiesced in by the other heirs.

By stipulation of the parties (page 220 of the record), Charles and Morgan Spence were chargeable for each year with eight bales of cotton, five hundred pounds each, for the use of the land from 1924 to 1938, inclusive. They exhibited an itemized statement of the expenditures on that account beginning with the year 1927. This was shown to have been equal to the value of the cotton chargeable, but it included provision for the three old people until two of them died, and their burial, and then for the other, Robert L. Spence, known as Uncle Bob, eighty-four years old. Prior to 1927 there was no itemized statement, but they claimed it was so likewise used. The trial court approved this status, and we think it was duly supported by the evidence.

We think the effect of the stipulation was to eliminate the Government rental checks paid them from year to year. By accounting for the value of the use and occupation, the rights of the landowner are satisfied. The rental checks were provided by the Government by arrangement with those cultivating the land to regulate the amount of production, and to conserve waste, and the landowner, who collected the full value of the land rent, was not due to participate in such Government subsidies. See, Stahmann v. Vidal, 305 U.S. 61, 59 S.Ct. 41, 83 L.Ed. 41; North Dakota-Montana Wheat Growers Ass'n v. United States, 8 Cir., 66 F.2d 573, 92 A.L. R. 1484; Charles Uhden v. Charles Greenough, 181 Wash. 412, 43 P.2d 983, 98 A.L. R. 1181; 2 Am.Jur. 405, section 12; 418, 419, section 25.

Mental Capacity of Robert L. Spence to Execute Deed to Josephine Spence.

The court found from the evidence that on account of his mental capacity, coupled with inadequacy of consideration, the deed was void, and so decreed. His share was an undivided one-fifth interest, subject to certain dower rights. The total purchase price was $4,315, which intervener, said grantee in the deed, contends was not as much as its fair value. Her deed recites a consideration of "one dollar and other valuable consideration." Her evidence was that she then paid him four or five

dollars, and afterwards frequently sent him money, though the amount is not named, presumably small sums, and spent other sums for his comfort, all of which is not aggregated, and not shown to have been obligatory as a part of the consideration. It does not appear that she agreed to give him any specific sum or other thing of value as the consideration of the deed. She is claiming his share on distribution under that deed. He was about eighty-four years old, and never developed into the mentality of man, as we view the evidence. He was said to be a moronic type of man, with the mentality of a child. He was well mannered and disposed, friendly and physically able, but never held a responsible job. He had been a messenger boy and mail porter, but had no capacity to engage in a serious or responsible business transaction. That had been his condition during the long acquaintance of old citizens, apparently from childhood, noticeable to anyone who had observation of him.

The grantee in the deed had known him for many years, was his niece, and such conditions must have been apparent to her as to anyone else, if they existed. She was not without notice of his mental status whatever that may have been.

While the statute, section 6822, Code, serves to sustain the effect of a deed as a conveyance of the title when made by an insane person to one without notice of such insanity, who pays a valuable consideration, such vendee nevertheless must pay to the insane person the difference between the market value of the interest sold and the price paid. Insanity under this statute means insufficient capacity to understand in a reasonable manner the nature and effect of the act which he is doing. Hall v. Britton, 216 Ala. 265, 113 So. 238; Weaver v. Carothers, 228 Ala. 157, 153 So. 201. A deed to a person with notice of such incapacity will be set aside in equity, without a restitution of the consideration, if it has been dissipated or wasted, or is of a nominal amount. Ivey v. May, 231 Ala. 339, 164 So. 732.

In this case the evidence shows to our satisfaction that Robert L. Spence was mentally incapacitated to make the deed to Josephine Spence, of which she had notice: that the amount she paid him was nominal, and need not be considered in granting the relief. In fact no claim is made for such restitution.

### The Will of D. M. Spence.

We have referred to the instrument bearing his name. It does not purport to pass any present interest. But it "gives and bequeaths." It calls itself a will in several instances, and has all the vernacular of a will and none of a deed. It is signed and witnessed, and dated November 21, 1906. Then written in pencil below the signature are these words, "I prefer this instrument be accepted and put on record as a deed, not as a will." That is dated February 15, 1908, signed, but not witnessed: the instrument was not delivered, so far as the evidence shows, nor recorded, no consideration paid for it: no possession or claim of ownership shown under it. But for several years before 1924, he had possession of the land and divided the income with the other cotenants, and died about that year without any apparent surrender of his interest.

Such a statement of the facts shows on its face that it is not effective as a deed, nor as an agreement for value to make a deed or will. It can have no influence, since it was not probated as a will.

### Objections to Confirmation of the Sale.

The sale was had on Monday, January 2, 1939, which was a holiday, when some of the business houses were closed, but a large crowd was present and much competitive bidding, with no unfairness shown. Notice of the proposed sale was advertised for three successive weeks prior to that date in a newspaper published in the county, and posted at the courthouse door for thirty days, as had been ordered by the court. The two items of property were separately sold. The court has overruled exceptions to the report, confirmed the sale and ordered deeds made to the respective purchasers.

The purchaser of the town house was G. P. Allen, a stranger to the title, and his bid was accepted, and deed ordered to be made. We assume it has been done, since the decree has not been superseded. He has not been cited and has not appeared to resist the effort on this appeal by the sixteenth assignment of error to reverse the decree to that extent. He is a necessary party to that extent. Kitchell v. Irby, 42 Ala. 447; Harduval v. M. & M. Trust & Savs. Bank, 204 Ala. 187, 86 So. 52; Platt v. City of Punta Gorda, 98 Fla. 1242, 125 So. 381; 2 Am.Jur. 959, section

179; 16 R.C.L. 113, section 81; Hayes v. Betts, 227 Ala. 630, 151 So. 692, 95 A.L.R. 1484.

■ The farm land was sold to Sam Y. Spence, a party to the suit, and represented on this appeal by counsel. The purchaser at such a sale is due to have it confirmed if the price bid is measurably adequate, or not greatly less than its market value, although some of the parties may offer to bid a much larger sum at a resale. Glennon v. Mittenight, 86 Ala. 455, 5 So. 772; Bethea v. Bethea, 136 Ala. 584, 34 So. 28; DeLoach v. White, 202 Ala. 429, 80 So. 813; Schloss-Sheffield S. & I. Co. v. Borden, 201 Ala. 628, 79 So. 190.

■ In no sense is the evidence satisfactory that the sale of either the land or the town property was greatly less than its market value. This appellant Josephine Spence was present at the sale, and made no bids on the property, and let it be bid off at what she says was for amounts greatly less than their respective values, though she apparently was financially able to buy. She was engaged in the real estate business in Birmingham, Miami, and West Palm Beach, where she has bought, built and sold houses, and did not bid at the sale because she had it in mind to appeal from the decree, but now offers to raise the bid if there is a reversal and the property is again sold under decree of the court; but does not say to what extent she would raise it. This evidence is not sufficient to require us to reverse the decree of the court confirming the sales.

■ We need only further observe that though made a legal holiday by section 9215, Code, it (January 2nd, the date of sale) is not made thereby dies non juridicus. Belmont Coal & R. Co. v. Smith, 74 Ala. 206. We do not think there was any prejudicial effect shown from conducting the sale on that day.

Such other minor irregularities as are pointed out by appellant do not need to be discussed, except to say that they are not material.

## Costs of Trial Court.

■ The trial court ordered the payment of the attorney's fee out of the proceeds of the sale, and that complainants and respondents pay two-fifths of the costs, and that intervener pay three-fifths of it. The costs of obtaining a decree of sale and conducting the sale are a very small part of those otherwise incurred. The most of it related to controversies between some of the coowners, and in an unsuccessful effort by the intervener to set aside the sale. We see no reason to change the order of the court in this respect.

## Objection to the Proportionate Share of Josephine Spence.

■ There was a reference to the register and his report on it ascertained the respective shares of the cotenants. Exception was made to it, but we find no decree on the exception, nor on the report on reference. We will not therefore consider appellant's contention in this respect. However, her share may be easily computed in the light of the result we have reached affirming the decree of the trial court on the questions which control the amount of such interest.

## Dower of Ruby Spence.

■ She insists by counsel that since her husband and she were residents of Florida when he died, he owning then an undivided interest, and had no children, that her rights as his widow were controlled by the laws of Florida. We cannot concur in that contention, for the law of the state in which the land is situated governs exclusively its descent. Frederick v. Wilbourne, 198 Ala. 137, 73 So. 442; Grimball v. Patton, 70 Ala. 626.

The trial court has not acted on the register's report in this respect. When this is to be done she can point out the proper manner of computing her interest under the Alabama law.

We have more than once referred to the fact that the trial court has not acted on the exceptions to the register's report showing the proportionate interest of the cotenants. That therefore remains and is an open incident in the case. The trial court will proceed to that end, and make a final order of distribution which has not been done, and cannot be until the exceptions to the register's report are heard and acted on, or the interest of each cotenant otherwise fixed.

The decree of the trial court is modified so as to award Mr. Walter S. Smith $87.50, and Mr. D. W. Jackson $344 as attorneys' fees. The total of those amounts is the sum agreed on as a fee for services rendered to the common interest of the cotenants.

The decree as thus modified is affirmed. The costs of appeal in this Court and in the trial court are taxed one-half against appellant and one-half to be paid out of the common fund.

Modified and affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

On Rehearing.

FOSTER, Justice.

Application for rehearing overruled.

GARDNER, C. J., and THOMAS and BOULDIN, JJ., concur.