13 So.2d 564

**HENDERSON v. COON.**

**4 Div. 280.**

Supreme Court of Alabama.

May 13, 1943.

P. B. Traweek and J. C. Fleming, both of Elba, for appellee.

Mizell & Pearson, of Andalusia, for appellant.

FOSTER, Justice.

In this case, the purpose and equity of the bill filed by appellee against appellant are stated on the former appeals. Coon v. Henderson, 240 Ala. 492, 199 So. 704; Id., 242 Ala. 144, 5 So.2d 397.

After remandment there was a reference, and a report of the register, a decree confirming the report, with no exceptions to it filed, in which the court adjudged that complainant's equity be established and granted, and that respondent in possession of the land had received amounts of rents, crops and other charges exceeding by $399.80 the aggregate of the charges found by the court to be presently payable by complainant to effect a redemption, and ordered the register to convey to complainant the land in question without prejudice to the rights of the two mortgagees. One of those mortgages was to the Federal Land Bank, which W. F. Coon had assumed, and the other to the Land Bank Commissioner, one-half of which he assumed. Both were payable in deferred installments.

The mortgage to the Federal Land Bank was on the land when respondent first purchased it, and no showing is made that he

became personally bound to pay this mortgage, and it covers only the land here in question. Two of the items charged to complainant were installments on this mortgage, one of which had been paid by respondent and one remained unpaid. The entire amount had not been declared payable by the Federal Land Bank, although there is an acceleration clause.

To the extent that the decree provided that the redemption was without prejudice to that mortgage, but did not require complainant to pay that part of it not then due as a condition to redemption, it was not prejudicial to respondent and he does not complain of it. But the mortgage to the Land Bank Commissioner embraced land not here involved as well as that also. Respondent had executed it and was personally liable for its payment. The mortgagee would not split up the matter for them. The contract between respondent and W. F. Coon contained provisions, which the parties call an equitable mortgage, and it was so treated on the first appeal, to secure each against a failure of the other to pay his moiety of the debt.

Respondent has in his possession funds for which he should account on a redemption by complainant.

We think the proper method of stating the account is to charge complainant with the amount paid by respondent to the Federal Land Bank, for which he was not personally liable, but for which W. F. Coon became liable, and the interest on it (but we need not here be concerned with the balance of that debt, for reasons which will be stated later); to charge her with one-half of the amount paid by respondent to the commissioner, and also charge her with one-half of the entire balance owing the commissioner, whether delinquent or not, since W. F. Coon agreed to pay that, and since respondent is personally liable to the commissioner for it all. This is on the theory that this situation reflects the relations of W. F. Coon and respondent under their agreement, by which Coon owed the respondent the duty to discharge one-half of that debt. It would not discharge that obligation to allow a redemption upon payment of one-half of the delinquencies with no provision for paying the balance, for if she did not later fulfill Coon's obligation to pay half of their debt, it would require respondent to pay it all, because

he is obligated to the commissioner to pay it all, and it would be necessary to do so to save his other land in the same mortgage. But the payments to the commissioner are in annual installments extending to 1946. A court of equity, in decreeing specific performance (redemption here is dependent upon a performance) of the contract, does not ordinarily undertake to direct and supervise a performance which requires installment payments covering a number of years, and it will often deny such relief when it cannot dispose of the matter in controversy "by a decree capable of present performance." Electric L. Co. of Mobile v. Mobile & Spring Hill Ry. Co., 109 Ala. 190, 195, 19 So. 721, 723, 55 Am.St.Rep. 927; Stewart v. White, 189 Ala. 192, 66 So. 623; Roquemore & Hall v. Mitchell Bros., 167 Ala. 475, 52 So. 423, 140 Am.St.Rep. 52; Bessemer C., I. & Land Co. v. Bullard, 215 Ala. 433, 111 So. 5; Tombigbee Valley R. Co. v. Fairford Lumber Co., 155 Ala. 575, 47 So. 88.

We think the present situation is illustrative of one in which this should not be done. If the accounts are not presently adjusted, but the parties are left free to pay one-half of the debt to the commissioner, it would be difficult to formulate a decree at present which would do complete justice to respondent.

In redeeming complainant must discharge the obligation of W. F. Coon to respondent, completely insofar as he may be prejudiced by not doing so. Literally that is to be performed through the years. The payment of one-half of the debt due the commissioner is an obligation owing respondent, as assumed by W. F. Coon. A failure to discharge it would be prejudicial to respondent. Complainant, if she redeems now, must satisfy that obligation so as to protect respondent from liability for her failure to do so. And she should do this as a condition to her redemption, and as a completed occurrence. But it is not all due now, so she cannot pay the debt to the commissioner now. The court will not deny her relief if there is some method of rendering a decree so that the parties will presently have their rights adjusted and secured.

The procedure here outlined will protect respondent fully and discharge complainant from further performance, whose failure would be prejudicial to him. But it would not completely protect complain-

ant against a default of respondent, but the best we can do for her is to retain that fund in court until the land is discharged from the debt of the commissioner. If complainant does not see fit to accept our decree, she is under no obligation to do so.

█ The register stating the account properly charged complainant with $138.-95, being one-half of the payment made by respondent to the commissioner on a delinquent installment due October 1, 1939, together with one-half of the installments on that mortgage which were due October 1, 1939, 1940 and 1941, respectively, and also properly charged her with $151.68 as having been paid by respondent to the land bank on November 14, 1940, and with a fire insurance premium of $33.50. But should not have charged her with the delinquent payment to the land bank due November 1, 1941. Respondent was under no obligation to pay this, and did not pay it. In respect to all features of that mortgage, it is sufficient to allow a redemption subject to it; for complainant will be forced to pay it for the protection of her title and her failure to do so will not prejudice respondent. But that is not true as to the mortgage to the commissioner. Respondent owes that to the commissioner. She must discharge one-half of it to effect redemption, and that amount should be charged against her in a statement of the accounts. She was properly credited by the register in his statement, but interest to May 1, 1943 should be added.

Complainant claims an additional credit for the farm benefits paid by the Government. Parity and conservation checks were paid to respondent for the year 1940. They aggregate $164. This is a bounty paid by the Government and it is usually intended for him who cultivates the land and produces crops. Spence v. Spence, 239 Ala. 480(7), 195 So. 717; Durr Drug Co. v. Acree, 241 Ala. 391, 2 So.2d 903 (13).

Parity payments are provided for in section 303 of the Agricultural Adjustment Act of 1938, see Title 7 U.S.C.A. § 1303, aided by section 608e, Title 7 U.S.C.A. defining the base period, and the Deficiency Appropriation Acts.

Conservation of cotton land is provided for in section 381(a) of the Agricultural Adjustment Act of 1938, supra, Title 7 U.S.C.A. § 1381(a). This provides that payment shall be made directly to each person entitled thereto.

Section 385 of the Act as amended July 2, 1940, see 7 U.S.C.A. § 1385, provides that the facts constituting the basis of conservation and parity payment shall, when officially determined as there provided, be final and conclusive and shall not be reviewable by any other officer or agency of the Government (see Title 16, section 590n), but that "in case any person who is entitled to any such payment dies, becomes incompetent, or disappears before receiving such payment, or is succeeded by another who renders or completes the required performance, the payment shall, without regard to any other provisions of law, be made as the Secretary of Agriculture may determine to be fair and reasonable in all the circumstances and provide by regulations. As amended July 2, 1940, c. 521, § 7, 54 Stat. 728."

The amendment of July 2, 1940, also. made provision looking to adjustments by the administrators of the Act between the payee and third persons. See 7 U.S.C.A. § 608—1.

The instructions issued by the United States Department of Agriculture contain the following:

K (1) "If a creditor, including the landlord or operator of the farm, harvests the crop of his debtor, he does not become a producer on the farm with respect to the crop unless he acquires complete title to the crop and has the right to harvest the crop as he wishes and for his own account without the necessity of accounting to the debtor for the proceeds of the crop. If the creditor does not acquire complete title to the crop and must account to the debtor for the proceeds of the crop, the debtor shall be shown as the producer."

K (3) "If a landlord, tenant, or sharecropper loses his interest in a crop through sale or legal process and also relinquishes his position as a producer on the farm, or, if a tenant or sharecropper abandons a crop the yield of which justifies the harvest thereof, his successor-in-interest, if qualified under the provisions of paragraph 1 above, is entitled to all of his share of the payment for the crop and subject to any applicable deduction, except that, if the loss or abandonment of his interest and relinquishment of the position of producer

takes place after the beginning of and before the completion of harvest, the payment or deduction shall be divided between the original producer and his successor-in-interest in the proportion that they share in the crop, or proceeds thereof, harvested from the acreage in question."

Some of the statutes upon which these instructions are supported insofar as the crop year 1940 is concerned, are set out in the Soil Conservation Chapter of Title 16 U.S.C.A. beginning with section 590a, also section 385 of the Act of 1938, supra. Section 590h(e), is specific that benefit payments shall be divided in proportion that the persons are entitled to share in the proceeds of the agricultural commodity with respect to which such payments are made.

For the year 1939, respondent collected rent from W. F. Coon, who was the producer of the crops and who received the Government checks. On August 20, 1940, respondent with the consent of W. F. Coon took over the crops grown by him to that date on the land then outstanding, and gathered and marketed them and collected for their value the net sum of $403.55, as of October 1, 1940. For 1941 respondent collected rent from a tenant producer who received the Government checks.

In this litigation, a suit by the wife of W. F. Coon, her rights are equal to those which her husband would have had without a foreclosure. So that for the purposes of this case, the situation is as though respondent as a mortgagee entered into possession of the land on August 20, 1940, taking over the ungathered and immature crops, and gathered and marketed them, and received the Government checks going to the producer of them, without the mortgagor making any claim to any of it.

The theory on which a mortgagee in possession before foreclosure is held accountable for rents is that since the mortgage is merely a security for the debt, when the mortgagee receives rents and profits, he is a trustee in equity for the mortgagor (though at law it is not so considered). So that in equity he owes the mortgagor the duty to apply the amount to the mortgage debt. Toomer v. Randolph, 60 Ala. 356; Lovelace v. Hutchinson, 106 Ala. 417, 17 So. 623.

This respondent took over and gathered the crops here in question under such circumstances as to require him to account on this redemption for all their proceeds. The regulations which we have copied are to the effect that under those circumstances respondent did not become the producer, but that the entire check which he received was for the benefit of W. F. Coon, who was the producer.

In order to qualify under paragraph K (1), supra, as a producer, respondent in harvesting the crop must have been acting without liability to account for them. Since he was liable to account to this complainant for all crops so harvested, he does not become the producer even in part.

While there may have been no fault to find with the county committee in paying the money to respondent, it was money due to Coon under the federal acts and regulations. So that respondent must account to him for it as for the amount of the crops which he appropriated that year. Burns v. Clarkesdale Production Credit Ass'n, 192 Miss. 141, 5 So.2d 10.

We cannot agree with the court that the complainant should be credited with $219.34 costs which had been taxed against respondent. We held on former appeal that since the rent due him for 1941 was collected and appropriated to the payment of that cost he should be charged with the amount of that rent, which the register did properly. Of the total sum of it respondent only received $5.66 in cash, and the balance of $219.34 was applied to the payment of that cost. He was chargeable with the whole of it because it was as though he had collected it, and it having been applied to the payment of the cost taxed against him, the effect is a satisfaction of that cost, but with a proper charge to him of only $225.00 as made by the register.

Moreover, the cost taxed or taxable against respondent in this cause should not be included as a credit to complainant unless she has paid it. If she has not done so, she could get credit for money which she has not and may never pay. The costs as taxed and not paid should be taken care of separately and not as a part of the accounts on redemption.

However, another item of cost was paid by complainant which was taxed against respondent on the second appeal in this case of $102, and it was properly credited

to complainant in stating the account. We will now state the account as follows:

Charges to complainant:

1. March 27, 1939 (paid by Henderson to Land Bk. Comm.) $ 138.95
   Interest at 6% to May 1, 1943 (1/2) ..................... 34.13
2. October 1, 1939, due Land Bk. Comm. by Coon (1/2) ....... 132.00
   Interest at 6% to May 1, 1943 28.38
3. October 1, 1940, due to Land Bk. Comm. by Coon (1/2).. 124.50
   Interest at 6% to May 1, 1943 19.29
4. October 1, 1940, due to Land Bk. Comm. by Coon (1/2).. 121.00
   Interest at 6% to May 1, 1943 11.50
5. Balance owing to Land Bank Comm. (not due) 1/2...... 500.00
   Interest at 5% from October 1, 1941 to May 1, 1943........ 37.71
6. November 14, 1940, paid by respondent to Fed.Ld.Bk...... 151.68
   Interest at 6% to May 1, 1943.. 22.44
7. Fire insurance premium...... 33.50

$1355.08

Credits:

April 24, 1940, rents collected for 1939 ...................... $ 225.00
Interest on same at 6% to May 1, 1943 ...................... 54.22
October 1, 1940, crops of 1940 received by respondent ......... 403.55
Interest on same at 6% to May 1, 1943 ...................... 62.54
October 1, 1941, rents collected for that year ................ 225.00
Interest at 6% to May 1, 1943.... 21.29
Amount of cost on second appeal paid by complainant.......... 102.00
but taxed to respondent (date not shown)
Government Agricultural Adjustment Act checks.............. 164.00
Interest at 6% December 30, 1940, to May 1, 1943.............. 21.69

$1279.29

A decree will be rendered fixing the amount of $75.79 as the sum necessary to be presently paid into court by complainant to effect a redemption of the eighty acres of land described in the bill of complaint (E ½ of SW ¼, section 24, Township 3, Range 17, Covington County, Alabama), together with one-half the cost of the present appeal in this Court and in the circuit court. One-half the costs of this appeal and all costs of the circuit court in other respects are taxed against appellant (respondent in that court) as was done by it.

Complainant is allowed sixty days from this date in which to make payment to the register of the circuit court, in equity, for Covington County of said sum of $75.79 and interest at six per cent. from May 1, 1943, to date of payment, and to pay one-half the cost of appeal in this Court and in the circuit court. If she shall fail to do so in that time, all relief to her in the premises will be forever foreclosed, and all the costs of this cause in both courts which have not then been paid, will stand taxed against her.

If she shall pay said sum and costs into court as here directed, the register will make a deed conveying to her said land. Such payment shall be taken as a complete performance by her of her obligations to respondent in respect to said redemption, including the balance of the debt to the Land Bank Commissioner. If respondent shall fail to satisfy that mortgage or to get the eighty acres of land above described released from it, resulting in prejudice to complainant, her rights will be subject to such further remedies as may be available at that time. Complainant must of course for her own protection pay all sums owing the Federal Land Bank on the mortgage to it, but which was not executed by respondent. The money so paid into court by complainant shall be applied to pay the costs which have been taxed against respondent and which shall then remain unpaid and the remainder shall be paid to respondent when he shall satisfy the register that the entire debt to the Land Bank Commissioner herein referred to has been fully paid and satisfied or that the eighty acres of land now sought to be redeemed has been effectually released from it.

Application may be made to the judge of the Circuit Court of Covington County to obtain the right of Henderson or his tenant to retain possession of the land during the year 1943. He shall determine and by order prescribe the conditions on which the land may be so retained in possession by either of them, and whether they shall execute a rent note to complainant in an amount to be fixed by the court, or execute a bond patterned after section 338, Title 7, Code of 1940. And the judge shall direct the delivery of possession of the land to complainant upon a redemption as here authorized, subject to his or-

ders whereby possession may be retained for the current year.

In default of such attornment by the tenant or of such bond as above provided, in thirty days after complainant shall have paid said sum into court, the register shall put complainant into possession.

A decree will be here rendered embracing the conclusions which have been here announced, and the cause remanded for such proceedings as may be necessary to carry this decree into effect, and for that purpose jurisdiction is reserved for that court.

Reversed, rendered and remanded.

GARDNER, C. J., and BOULDIN and LAWSON, JJ., concur.