Appeal by Thomas Sanford and two other children of Marion J. Sanford from a judgment of the trial court confirming an auction sale of real estate conducted at the Tuscaloosa County Courthouse on July 2, 1976.
All parties in this action are children of Marion J. Sanford, deceased. After their father's death, Thomas and James Sanford brought an action against their fourteen brothers and sisters seeking a sale for division of their father's 147 acre estate, alleging that the property could not be equitably divided. Attorney John Galese, a husband of one of the defendants, filed the suit for Thomas and James Sanford; however, he subsequently withdrew as counsel for Thomas Sanford. The defendants' answer to the complaint admitted its allegations. The controversy then was submitted upon the pleadings and the trial court, after finding that the property could not be equitably divided, ordered the sale of the property by auction.
Mrs. Barbara Harris, Director of the Register's Division of the Tuscaloosa County Circuit Clerk's Office, advertised the sale in the Graphic newspaper once a week for three consecutive weeks, and Thomas Sanford advertised the sale eight times inThe Tuscaloosa News. On July 2, 1976 the auction was conducted by Mrs. Harris with the assistance of Mr. Galese. During the auction all five parcels were offered for sale separately and bids were taken, but no bids were accepted. Then parcels two, three and four were offered together for sale and bids were taken, but none were accepted. Finally, all five parcels were offered together for sale and the bid of the highest bidder was accepted. Mr. Galese, who assisted by conducting the bidding while Mrs. Harris recorded the bids, sold all five parcels together to Earnest Sanford for $37,600.00. The high bids for the various parcels were as follows: *Page 367 
Parcel I $ 4,300.00 Thomas Roberts Parcel II $ 2,600.00 Thomas Roberts Parcel III $ 4,100.00 Thomas Roberts Parcel IV $ 6,000.00 Florence Galese Parcels II, III, IV $26,000.00 Earnest Sanford Parcel V $ 1,700.00 Richard Holman All five parcels $37,600.00 Earnest Sanford
Several days after the auction, Mrs. Harris filed her report of the sale in the circuit court, certifying Earnest Sanford as the highest and best bidder. Thomas Sanford filed an exception to the register's report, and he requested and received two hearings on his objections to the register's report. After hearing testimony about the fairness of the property's sale price the trial court entered an initial order confirming the sale. Following this, Thomas Sanford moved to vacate the trial court's order and filed various discovery pleadings. In his motion to vacate the judgment he called attention to an offer by one Glendon Sullivan to purchase the 147-acre tract for $51,000.00 and Sullivan's tender of a 10% deposit into court. Although some discovery was allowed, the trial court in its final decree on February 9, 1977 overruled the plaintiffs' motion to vacate the judgment and upheld its prior judgment affirming the sale.
Among the issues the plaintiffs have raised here is: Whether the price obtained at the sale was inadequate.
The appellants argue that the trial court erred when it affirmed the sale to an interested party because the sale price was inadequate. They cite DeLoach v. White, 202 Ala. 429,80 So. 813 (1919) for the proposition that inadequacy of price and not gross inadequacy of price is the standard for reviewing judicial sales when the purchaser is not a stranger. AlthoughDeLoach does not establish this, the standard for reviewing judicial sales when the purchaser is not a stranger is set out in Spence v. Spence, 239 Ala. 480, 195 So. 717, 723 (1940):
 The purchaser at such a sale is due to have it confirmed if the price bid is measurably adequate, or not greatly less than its market value, although some of the parties may offer to bid a much larger sum at resale. (citations omitted) (emphasis added)
Accord, Schloss-Sheffield Steel Iron Co. v. Borden, 201 Ala. 628,79 So. 190 (1918).
The record shows that there were at least fifty people at this public auction held in the lobby of the courthouse. It also discloses that there were a number of realtors present who frequently attend auctions such as this. The auction sale was advertised according to law in the Graphic and additionally inThe Tuscaloosa News. Although there is conflicting evidence in the record, there is evidence which furnishes a reasonable inference that the property was sold for an adequate price. Several realtors who bid on the combined five parcels testified that their bid limit for the property was about $35,000.00 and that the purchase price was adequate. Several of the heirs also testified that the purchase price was an adequate one. The total amount bid for all five parcels by adding each of the separate parcel bids is as follows:
 Parcel I $ 4,300.00 Parcel II 2,600.00 Parcel III 4,100.00 Parcel IV 6,000.00 Parcel V 1,700.00 --------- $18,700.00
The total amount bid for all five parcels using combined bids is as follows:
 Parcel I $ 4,300.00 Parcels II, III, IV 26,000.00 Parcel V 1,700.00 --------- $32,000.00
And on the question whether the purchase price was measurably adequate, Sullivan's offer after the auction sale is irrelevant. Spence v. Spence, supra.
The appellants also argue that the trial court erred when it affirmed the auction sale because of irregularities in the bidding procedure of John Galese. They cite us to testimony that Glendon Sullivan made a bid about the same time or just before Mr. Galese said "sold" and that Mr. Galese "went fast" when he said "37,600 once, twice, and sold." Although the evidence is conflicting, there is evidence in the record which will furnish a reasonable inference that there were no irregularities in Mr. Galese's bidding procedure. The record *Page 368 
discloses this testimony by Mr. Glendon Sullivan:
 Q I am going to ask you something. I am going to get over here and I am not trying to be picky, but this is important. The judge has got to rule on this case. Now he is saying sold for the third time. Now what did you say and will you say it about as loud as you think you said it?
 A Just before he said the third time, I was going to raise it to thirty seven eight.
Q What did you say?
A I said thirty seven and he said sold.
Q You never said thirty eight?
A I never could get it out.
Further, several other persons present at the auction testified that there was adequate time for each of them to have made an additional bid before Mr. Galese said "sold" to Mr. Earnest Sanford. And since the auction room was fairly noisy from people talking among themselves Mr. Galese may not have been aware of Mr. Sullivan's bid until after he said "sold." The record discloses Mr. Galese's testimony to this effect:
 A At that time, after thirty thousand dollars or somewhere in that neighborhood, there were in essence two bidders. There was Mr. Glendon Sullivan and Mr. Ernest Sanford and they were on opposite ends of the room. The bidding did not jump at very large increases. I don't remember specifically but there were some fifty dollar increases and possibly one hundred dollars and possibly some higher, but they were relatively small increases, and the bidding took place in this fashion: Mr. Sanford would bid. I would call the bid once twice and the third time, and right before the third bid Mr. Sullivan bid, waiting until the very last moment to bid, and then Mr. Sanford would bid and the same thing, of course, would go with Mr. Sullivan, not bidding the first time the bid was called but toward the end of the bid. The very last time the bidding took place, it was a $37,600.00 bid by Mr. Ernest Sanford who was on my right. I called the bid 37,600 going once and paused, 37,600 going twice and paused, 37,600 going three times, sold to Ernest Sanford. As I said sold, the word sold, before I got the word to out, sold to Ernest Sanford, after the word sold but before the word to, I noticed Mr. Glendon Sullivan raising his hand and he attempted or was starting to say something. I don't remember what he said. I did say to him `I am sorry, the bidding is closed.' . . .
The appellants contend that it was improper for Mr. Galese to have acted as the auctioneer and that he didn't follow the procedures he outlined at the beginning of the auction. However, Mrs. Harris testified:
 Q Tell the court, please, how I [Mr. Galese] came about assisting you in the conducting of the sale? How did that come about?
 A You asked me if you could and I said it would be alright with me. Usually if I had a large table, I would ask a local attorney to help me.
 Q Is it standard or operating procedure here in Tuscaloosa County for you as director of that division to ask for assistance in conducting sales?
MR. HUST: We object.
THE COURT: Overrule.
A I have done it before.
 Q Your office doesn't maintain any specific written procedure for conducting such sale?
A No, sir.
 Q You just conducted it the way you usually conduct them?
A Yes, sir.
 Q And this sale was conducted in a manner that was consistent with the way you usually conduct sales of this type, is that right?
 MR. HUST: I object. I don't believe the manner other sales are conducted has anything to do with it.
THE COURT: Overrule.
A Yes, it was.
 Q There was nothing unusual about this sale, was there?
A No, sir. *Page 369 
Despite the conflict in the evidence, there was testimony that Mr. Galese did follow the procedure he established before the auction began. Thus, there is evidence furnishing a reasonable inference that there was no impropriety by Mr. Galese acting as the auctioneer and that he did not conduct the auction improperly.
The appellants contend that it was error for the trial court to award $3,700.00 for attorney's fees to Mr. Galese, citingPate v. Law, 277 Ala. 608, 173 So.2d 596 (1965). In Pate this Court observed:
 The allowance of attorney's fees under the above statute [Tit. 46, § 63, Alabama Code of 1940 (Recomp. 1958)] is on the basis of, and solely for, benefits inuring to the common estate, and the tenants in common. (citations omitted). . . .
What evidence is there that Mr. Galese rendered services which inured to the benefit of the common estate? Some of the services rendered by Mr. Galese involved preparing the complaint seeking partition, assisting Mrs. Harris with the auction, attending two hearings after the auction, attending the pre-trial conference, and preparing two briefs for the trial court. Thus, the record discloses that Mr. Galese performed work which inured to the benefit of the estate, i.e., securing a final disposition of the auction sale so that the proceeds could be distributed to the heirs. The record also shows that Mr. John Owens, a Tuscaloosa County attorney, testified that the minimum acceptable legal fee for the attorney who brings the simplest kind of sale for division would be ten percent of the sale price, i.e., $3,600.00; and in this case, considering the complexities of parties and number of hearings, a reasonable legal fee would be twenty percent of the sale price, i.e., $7,500.00. Mrs. Louise Turner, another Tuscaloosa County attorney, testified that a reasonable legal fee in this case would be between four and five thousand dollars. Thus, there is evidence in the record which furnishes a reasonable inference that Mr. Galese is entitled to the attorney's fee of $3,700.00 awarded by the trial court.
The appellants further contend that the trial court erred in denying their motion for an order that certain facts be deemed admitted under Rule 36 (a), ARCP. This motion was made on December 23, 1976, after the hearing where testimony was taken concerning the adequacy of the bid price, but before the hearing on the allowance of attorney's fees to Mr. Galese. In brief the appellants maintain that after their motion was filed on December 23rd no answer was submitted before they filed a second motion on January 25, 1977 requesting that the facts in the original motion be deemed admitted. However, this argument overlooks the trial court's order of January 20, 1977. That order granted to defendants protective relief from answering appellants' questions in their request for admissions of fact with the exception of those questions concerning attorneys' fees which the court stated would be determined later by the trial court. Thus there was no error by the trial court in connection with this motion.
Lastly the appellants argue that the trial court erred in admitting the testimony of Thomas Roberts, Lee Pake and John Boles on the value of the real estate because they were not qualified as experts. The trial court did not err in admitting Thomas Roberts' testimony because there is no requirement that a witness who testifies to the adequacy of a real estate price be an expert. Adler Co. v. Pruitt, 169 Ala. 213, 53 So. 315
(1910). Additionally, because the appellants did not make a timely objection to the admission of testimony by Lee Pake, who viewed only a portion of the property, and John Boles, who viewed none of the property, they cannot now be heard to complain. Moody v. State ex rel. Payne, 295 Ala. 299,329 So.2d 73 (1976).
On review of an ore tenus case dealing with a sale of lands for division, we do not weigh the evidence regarding its reasonably satisfying effect on the issues tendered, but in considering it we indulge all favorable presumptions to sustain the trial court's conclusions which we will not disturb unless they are palpably erroneous or manifestly unjust. Sieben v.Torrey, 252 Ala. 675, 42 So.2d 621 (1949). *Page 370 
Finding no error the judgment of the trial court is due to be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.