75 So.2d 129

Sarah Harris IDE

v.

Eulalie Converse HARRIS.

7 Div. 237.

Supreme Court of Alabama.

Oct. 7, 1954.

Hood, Inzer, Martin & Suttle, Gadsden, and Knox, Jones, Woolf & Merrill, Anniston, for appellant.

Lusk, Swann & Burns, Gadsden, for appellee.

486

MERRILL, Justice.

This is an appeal from a decree holding that appellee, Eulalie Converse Harris, and appellant, Sarah Harris Ide, are tenants in common of a lot in Gadsden, Alabama, each owning an undivided one-half interest in the real estate, and ordering a sale for division.

Reduced to the simplest terms, the basis of the bill of Mrs. Harris to sell for division was that she owned an undivided one-half interest in the lot by virtue of a devise from her husband, R. A. Harris, to all real estate or interest therein, wherever located, owned by him at the time of his death, and that he received this interest in the lot under the will of his first wife, Mrs. Florrie M. Harris.

The appellant, in her answer and cross bill, showed that she was the only child of Florrie M. Harris and R. A. Harris; that her mother died in 1908; that the appellant was the "Sarah Harris" referred to in the will of Florrie M. Harris; denied that her father, R. A. Harris, took an undivided one-half interest in the real estate but, to the contrary, alleged that she took an undivided one-half interest in her mother's property at the time she became twenty-one years of age, and that she took absolute title to the other one-half interest at the time of her father's death, and she asked to be declared the owner of all the interest in the realty, subject to some leases, not here material.

The court granted the prayer of appellee and denied to appellant the relief prayed in her cross bill and the cause comes here with both parties agreeing that the main issue is the construction of the last will and testament of Florrie M. Harris.

The original will was not before the trial court but it was stipulated that the copy introduced in this case was a true copy and that it had been admitted to probate. Actually the copy used was a copy of the will as recorded in the Will Record in the Probate Office of Etowah County. It reads as follows:

"State of Alabama }
"Etowah County }

"I Florie M Harris being of sound mind and mem testamentary ory and wishing to make a testamentary disposition of my estate, do hereby publish and declare this my last will and testament

"I hereby nominate and appoint, should he survive me, my Father R B Kyle, my Executor and ask that he be allowed to administer my estate without bond

"I give to my husband R A Harris in trust, my entire estate, both real and personal, for the benefit and use (under conditions and restrictions hereinafter named) of himself and my only child Sarah Harris. My said trustee under this is to place all my real property in the hands of a responsible real estate agent, to be by him rented to the best advantage, the proceeds of rents to be applied as follows:

"First: To the agents commissions, which shall not exceed 5% of gross amount of collections from rents.

"Second: Payment of necessary repairs and all taxes and insurance as they fall due, and the balance shall be paid one half to my husband R A Harris and the remainder to Miss Hannah Crook, for the support and education

of my daughter Sarah I hereby direct that at my death my daughter Sarah shall be placed in charge of Miss Hannah Crook, who shall have full control of the education and rearing of my said daughter, Sarah, and I ask that no one be allowed to interfere with said Miss Hannah Crook in carryin out this greatest of trusts the training and education of my Child

"I want distinctly understood that my husband R A Harris, whom I appoint as trustee has no right to sell or exchange or in any way dispose of any of my real estate. And should my daughter Sarah survive my husband, then the income from rents and profits of my real estate paid to R A Harris shall be paid to Miss Hannah Crook for her use of my daughter Sarah. I believe the income mite be sufficient to support and maintain Miss Hannah Crook and my daughter Sarah enabling Miss Hannah Crook to devote her whole time to the rearing of my said daughter

"In the event my child lives to attain her majority, or to marry, then my trustee, R A Harris, shall turn over to Sarah one half of the property I own at the time of my death and which my Executor turns over to him as trustee under the provisions of this instrument

"Should I not have on hand moneys to meet all funeral expenses, I authorize my said trustee to mak a loan on my rents which loan shall be paid off and discharged before any division of income is made between my Child Sarah and my husband, R A Harris

"The above and foregoing page comprise My Will, — I hereby revoking all former wills and constitute R B Kyle my said Executor of this my last will

"In testimony whereof, I, the above named Florie M Harris, have hereunto set my hand and seal this the 9 day of November Nineteen hundred, and six. ..

"Mrs. Florie M Harris

"At Gadsden Alabama on the———— day of November Nineteen hundred and six (1906) the above named Florie M Harris known to us, signed and sealed this instrument and published and declared the same as her last will; and we in her presince and at her request, and in the presence of each other, signed our names as witnesses

"C L Guice
"Edyth Little"

It is stipulated that Mrs. Florrie M. Harris owned the real estate, the subject matter of this suit, at the time of her death and that both parties to the suit claim under her will. It is not disputed that appellant, the daughter of Mrs. Florrie M. Harris, inherited under the will and now owns an undivided one-half interest in said real estate; and that appellee's claim to the other undivided one-half interest is based on the contention that R. A. Harris, the appellant's father, the surviving husband of Florrie M. Harris, and now the deceased husband of appellee, took title to the other undivided one-half interest under the will and that he, therefore, had the right to devise this undivided one-half interest to appellee under the provisions of his will.

The appellant states her position in brief as follows: "R. A. Harris, the father of appellant, only took, under the will, the right to receive one half of the net rent from the real estate involved during his life. He never took title to any interest in said real estate and he had no title therein to devise to his second wife, the appellee."

The appellee states her position in brief as follows: "No rules of property based upon phraseology or language decided by this or any other court are presented on this appeal. The court is here invited and it becomes the court's duty from the four corners of the will to determine whether or not R. A. Harris, when Sarah arrived at majority or married took an interest in the property which he could pass by inheritance or devise. If the court concludes

this adversely to appellee that, of course, is the end of this case."

■ There are several rules of construction which guide us in our task of construing this will. The first, which is variously referred to as the "pole star", the "cardinal", the "fundamental" and the "cardinal and fundamental", is to ascertain and to give effect to the intention of the testator, and this intention, if legal, is the law of the instrument. 19 Ala.Dig., Wills, ☞439.

In our recent case of Baker v. Wright, 257 Ala. 697, 60 So.2d 825, 829, we said:

"The fundamental rule in the construction of wills is that the intention of the testator is the controlling factor, and it therefore becomes the duty of the court to ascertain, if possible from the terms of the will itself, the true intent of the testator and give it effect, if legally permissible. Schowalter v. Schowalter, 221 Ala. 364, 128 So. 458; Cook v. Morton, 254 Ala. 112, 47 So.2d 471.

\* \* \* \* \* \*

"Where a will is subject to construction, as unquestionably is this will, a court may ascertain the true intent and meaning of the testator by putting itself, as far as possible, in the place of the testator so circumstanced and reading all the provisions of the will in the light of the environment of such testator at the time he executed the will. Thomas v. Reynolds, 234 Ala. 212, 174 So. 753; Kimbrough v. Dickinson, 247 Ala. 324, 24 So.2d 424; Adams v. Jeffcoat, 252 Ala. 501, 41 So.2d 183.

\* \* \* \* \* \*

"In connection with the procedure relating to the interpretation of wills, certain legal principles have been educed and enunciated in the form of presumptions, which are now commonly accepted and regarded as substantive rules of testamentary construction. Prominent among these principles, and considered as an aid to assist and guide the judicial mind in discovering the intention of the maker of a will, is the presumption that the testator intended to dispose of his entire estate; or, stated negatively, it is not to be presumed that the testator intended to die intestate as to any portion of his property, unless the contrary intention is so plain as to compel a different conclusion. Arrington v. Brown, 235 Ala. 196, 178 So. 218, and cases cited."

In Baker v. Hendricks, 240 Ala. 630, 200 So. 615, 617 we said:

"Construction of a will, ambiguous in its provisions, is to ascertain the real intention of the testator. No presumptions or rules of construction can serve to rewrite a will at variance with its clear and unambiguous terms, whatever extraneous facts may have led the testator to make the will he did make. \* \* \*"

The court said in Blackwell v. Burketts, 251 Ala. 233, 36 So.2d 326, 328, that:

"True, where an estate or interest is bequeathed in one clause of a will in clear and decisive terms, this bequest cannot be taken away or cut down by raising a doubt upon the extent and meaning of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate. Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Pitts v. Campbell, 173 Ala. 604, 55 So. 500; Duncan v. De Yampert, 182 Ala. 528, 62 So. 673.

"But, the pole star to guide a proper construction is the intention of the testator. That is the law of the instrument and being the primary rule of construction, the testator's manifest scheme must be gathered from the whole instrument, conflicting clauses being reconciled so as to make each operative if possible. Pearce v. Pearce, supra; Wright v. City of Tuscaloosa,

236 Ala. 374, 182 So. 72; George v. Widemire, 242 Ala. 579, 7 So.2d 269; Orr v. Helms, 217 Ala. 603, 117 So. 61; Hatcher v. Rice, 213 Ala. 676, 105 So. 881."

See also Ramage v. Ramage, 258 Ala. 81, 61 So.2d 432.

We quote from the case of Roberts v. Cleveland, 222 Ala. 256, 132 So. 314, 316, as follows:

"We will undertake to construe the will in so far as to determine the nature of the devise to or for complainant. It is agreed by all that the purpose of courts in construing wills is to ascertain their meaning and the intent of the testator as therein expressed, considered in the light of attending facts and circumstances. When and only when such meaning and intent cannot be thus ascertained by the words of the will and attendant facts does the law undertake to assert certain rules for the determination of its true meaning as the result of human experience and a knowledge of human nature. Such rules are never thought to be arbitrary, but are stated by the courts as the effect of the natural bent of the normal mind.

"The law will therefore presume that, when a testator undertakes to make a will of all his property, he did not intend to die intestate as to any of it or during any period of time. As a corollary of this presumption it has been long settled that a devise of the rents and profits of property real or personal, without limit as to time and without a gift over, carries a fee to the devisee, unless a contrary intention appears. Stein v. Gordon, 92 Ala. 532, 9 So. 741; Guesnard v. Guesnard, 173 Ala. 250, 55 So. 524; Scruggs v. Yancey, 188 Ala. 682, 66 So. 23; Jordan v. Walker, 201 Ala. 248, 77 So. 838. The number of authorities in other jurisdictions could be extended to very large but unnecessary proportions.

"The statement of this result is often accompanied in the authorities with the qualification last above mentioned, that it is true only when no contrary intention appears from the will itself. This of course means in the light of the attendant facts and circumstances. It is after all a question of intention; for all estates by implication are founded on the presumed intent of the testator. Wolffe v. Loeb, 98 Ala. 426, 13 So. 744; Myrick v. Williamson, 190 Ala. 485, 67 So. 273.

"That implication which will defeat the heirs at law of the testator is disfavored. Caldwell v. Caldwell, 204 Ala. 161, 85 So. 493. It is said that this can be accomplished only by necessary implication in the absence of express words. Wilder v. Loehr, 211 Ala. 651, 101 So. 591.

\* \* \* \* \* \*

" \* \* \* The creation of a trust is certainly an appropriate method of securing to the devisee a life benefit, if such is otherwise fairly expressed or implied. \* \* \*"

The words in the first paragraph of the will "and wishing to make a testamentary disposition of my estate" show an intention of the testatrix to dispose of her estate by means of the will.

The third and fourth paragraphs of the will disclose that the chief and primary concern of the testatrix was the well being, the rearing, "the training and education" of her daughter Sarah, who, assuming that the will was executed in November 1906 was at that time two years of age. In each of these paragraphs the references to her husband clearly indicate an intention to create a trust with him as trustee. In the first sentence of the third paragraph she gives "to my husband R A Harris in trust", and refers to him in the second sentence as "my said trustee". The words "for the benefit and use (under conditions and restrictions hereinafter named) of himself and my only child Sarah Harris", and the provision that the balance of the proceeds of rents "shall

be paid one half to my husband R A Harris and the remainder to Miss Hannah Crook, for the support and education of my daughter Sarah" shows no intention to vest in R. A. Harris any title to any part of the real estate involved. We think the meaning of these two paragraphs is that R. A. Harris was to receive one-half of the net income during his life only, especially in view of the next succeeding paragraph.

This fourth paragraph reiterates the appointment of her husband as trustee, and most positively asserts that he "has no right to sell or exchange or in any way dispose of any of my real estate". It would seem that this language would prohibit any attempted disposition of the real estate, including a disposition by will. The power of R. A. Harris to dispose of the real estate is definitely lacking. The next sentence of the fourth paragraph is, in our minds, conclusive of the intention to limit the husband's participation in the proceeds of the real estate to his lifetime. This sentence reads "And should my daughter Sarah survive my husband, then the income from rents and profits of my real estate paid to R A Harris shall be paid to Miss Hannah Crook for the use of my daughter Sarah".

We are constrained to hold that this provision means that, upon the death of R. A. Harris, Sarah was to receive the income from the undivided one-half interest in the real estate which had been paid to R. A. Harris during his lifetime and this without limitation as to time or gift over.

■ The next and fifth paragraph is effective to invest in Sarah title to an undivided one-half interest in the real estate, which fact is agreed to by all parties to this suit. It should be noted that the testatrix is still referring to her husband as "my trustee," and makes a similar reference to him in paragraph six. Words used in a will should be given their usual and ordinary meaning, unless the context shows they are used in a more restricted sense, and words are supposed to be used throughout the instrument in the same sense. Hanson v. First National Bank, 217 Ala. 426, 116 So.

127; Caine v. Payne, 86 U.S.App.D.C. 404, 182 F.2d 246, 20 A.L.R.2d 823; 57 Am.Jur., Wills, § 1152.

■ In considering the will as a whole we note these features. The testatrix named her father as executor instead of her husband. She gave to her husband "in trust" and referred to him as trustee in paragraphs 3, 4, 5 and 6. The only discretion permitted him in the matter of handling the real estate was the selection of a real estate agent. The upbringing and training of their daughter were entrusted to one other than him; and even though he was conditionally empowered to make a temporary loan to pay the funeral expenses of the testatrix, still this loan would have to be repaid before he or the daughter could receive any income from the property. These features, together with the previous analysis of the will, bring us to the conclusion that it was the intention of the testatrix that her husband be the trustee of the real estate and that his only individual right was to receive one-half of the net proceeds from it during his life. It, therefore, follows that the decree of the lower court must be reversed.

The will in this case was before this court in 1919, when the executor, R. B. Kyle, sought to foreclose a mortgage given him by R. B. Harris on certain real estate which had been owned by Mrs. Florrie M. Harris at the time of her death. In that case, Harris v. Kyle, 203 Ala. 36, 81 So. 826, 827, the court held as follows:

"It is proper to say that we do not now attempt to construe the will or the mortgage, except in so far as it is necessary to say that, in construing both together, no relief sought in this bill can be had, because to do so would allow two trustees under the will to defeat the very trust which they were in duty and law bound to enforce.

"Neither the will nor the mortgage is a model of perspicuity, and, so far as the will is concerned, only one of the parties interested therein is before the court, and a further construction of it would now be improper.

"The main equity of the bill having been to foreclose the mortgage, and having failed as to this, it is unnecessary to pass on the other questions argued, some of which involve and might prejudice the rights of other parties named in the will, who are not before the court."

There is, however, certain dictum in that opinion which tends to put a construction on the will and the lower court in the instant case may have been, and probably was, influenced by it.

In the case of Watters v. First National Bank of Mobile, 233 Ala. 227, 233, 171 So. 280, 286, where a grandchild, in being but unborn, was not a party to the case previously before the court, we find these two sentences:

" * * * the positive authority of a decision is coextensive only with the facts upon which it is made, Walker v. Walker, 17 Ala. 396, * * *." and

"Viewed, therefore, in any aspect, we think the present appeal presents the matter of the final disposition of the corpus of the estate and the interpretation of the will relating thereto, entirely unembarrassed by any previous ruling on former appeal."

Therefore, since the court held in Harris v. Kyle, supra, that the daughter, although interested in the will, was not a party to the suit and that the bill to foreclose should be dismissed, we are not bound by any construction of the will which may be found in, or inferred from, that decision.

In view of the conclusion we have reached as to the construction of the will of Mrs. Florrie M. Harris, there is no necessity that we treat the other assignments of error which are argued.

It, therefore, follows that the decree of the trial court should be reversed and one here rendered dismissing complainant's bill.

Reversed and rendered.

All the Justices concur.