This is an appeal from a summary judgment entered on a petition seeking an interpretation of a trust instrument and instructions on the distribution of a trust estate. The petitioner, James Kirby, trustee of the William Gafford Revocable Life Insurance Trust ("Insurance Trust") named as respondents William Gafford, Juel Bass Gafford, Floyd O. Fitts, Jr., and Louise A. Fitts, in their various capacities.
The material facts in this case are not controverted; therefore, we adopt the facts as expressed in the trial court's order.
 "On August 14, 1983, William F. Gafford, Jr. ('William'), his wife, Susan Fitts Gafford ('Susan'), and their three minor children, Catherine Louise Gafford, Allison Claire Gafford, and Claudia Suzanne Gafford, were killed in a tragic airplane crash in Washington County, Florida. For all that appears, they died simultaneously.
 "There were no surviving issue of any of the five decedents, but William was survived by his parents, William F. Gafford and Juel Bass Gafford ('the Gaffords'), and Susan was survived by her parents, Floyd O. Fitts, Jr. and Louise A. Fitts ('the Fitts'). The only surviving heirs of each child were the paternal grandparents, the Gaffords, and the maternal grandparents, the Fitts. *Page 1357 
 "Both William and Susan died testate. William executed his Last Will and Testament on January 12, 1981. Susan executed her Last Will and testament about a month later, on February 14, 1981. Both wills 'pour' into the William Gafford Revocable Life Insurance Trust, a life insurance trust established by William for the benefit of Susan and their children.
 "On August 22, 1983, the wills of William and Susan were admitted to probate in Tuscaloosa County. In accordance with the wishes expressed in each will, William's father, William F. Gafford, was named executor of both estates. Susan's father, Floyd O. Fitts, Jr., was named administrator of the estates of the children, who died intestate. Susan's uncle, James Kirby, succeeded her as trustee for the William Gafford Revocable Life Insurance Trust."
During the proceedings in the trial court, the respective parties moved for summary judgments. The trial court ultimately granted summary judgment, made final pursuant to Rule 54(b), A.R.Civ.P., and entered an extensive order that made the following determinations:
(1) The property held as joint tenants with the right of survivorship was allocable in equal shares to the estates of William and Susan pursuant to Code of 1975, § 43-7-4;
(2) William's personal effects became part of Susan's estate, since, by the terms of the instruments, she was presumed to have survived her husband in the event of their simultaneous deaths;
(3) Susan's estate, which consisted of her personal effects, William's personal effects, Trust Estate "A" and her one-half share of all property held in joint tenancy with right of survivorship, would descend by intestacy to her heirs at law, Floyd and Louise Fitts; and
(4) Trust Estate "B" would descend by the intestacy laws to William's heirs at law, William and Juel Bass Gafford.
The appellants, William F. Gafford, individually and in his capacity as executor of the estate of William F. Gafford, Jr., and Juel Bass Gafford (hereinafter "the Gaffords"), raise two issues on this appeal. First, the Gaffords argue that the court's instructions on the distribution of the trust estate were erroneous because the court failed to recognize that they, in their individual capacities, were the designated beneficiaries under Section V(9) of the trust agreement. Second, the Gaffords contend that the lower court erred by refusing to admit into evidence an affidavit of the attorney who drafted the instruments in question. The Gaffords object to the court's determination that the admission of this evidence would violate the parol evidence rule.
We affirm the judgment of the lower court.
The resolution of both questions on this appeal necessitates our construction of three interrelated documents — the individual wills of William F. Gafford, Jr., and Susan Fitts Gafford and the trust agreement of the Insurance Trust, since all three instruments interact to form the scenario of the Gaffords' estate planning effort.
 William's Will
Other than his personal effects, which he devised to his wife, or to his children should his wife predecease him, the rest, remainder, and residue of his estate by the terms of William's will, "poured over" into the corpus of the Insurance Trust. The terms of this trust, which was to be created at his death "for the use and benefit of [his] wife and lineal descendants," were incorporated by reference into his will.
Two other items in this will must be noted. In Item IV, William stipulated that his wife should be presumed to have survived him in the event of their simultaneous deaths. Second, the will did not provide a contingent beneficiary should this trust fail for any reason. His will merely directed, in that event, that the trustee, nevertheless, should abide by the terms of the trust agreement in the administration of his estate. *Page 1358 
 Susan's Will
The plan of distribution in Susan's will was similar to the format utilized in William's will. Her personal effects were devised to her husband or to her children should William predecease her. The remainder and residue of her estate was devised to her husband, provided he survived her by at least six months. Should her husband not satisfy this condition, the remainder of her estate would "pour over" and become a part of the corpus of the Insurance Trust, which presumably, at her husband's death, either would have been, or was in the process of being, administered by its trustee. Her will also incorporated this trust agreement by reference and in Section V reiterated the presumption of her surviving her husband in the event of their simultaneous deaths. The final similarity in these wills concerned the contingency of a failed trust. In that event, her will directed the trustee to implement the terms of the trust agreement, previously incorporated as a testamentary trust. The will provided for no other contingent beneficiaries in the event her husband and children should all predecease her.
 The Trust Instrument
At the execution of the trust agreement in 1981, William Gafford, Jr., surrendered various life insurance policies to the trustee of the Insurance Trust and designated this trustee as the beneficiary of the proceeds of these policies, as well as any other properties that the grantor might add to the trust in the future. Apparently, at the time of the execution of this trust instrument, the proceeds from these policies constituted the bulk of the trust res.
The terms of the trust agreement in § III(2) empowered the trustee, at the grantor's death, to apportion the trust res
into two estates: Trust Estate "A" and Trust Estate "B." The trust's principal would first fund Estate "A," which was to consist of the greater of $250,000 or 50% of William's adjusted gross estate. So long as Susan survived her husband, Estate "A" would vest absolutely in her, free of the trust; however, a lapse of this estate would occur if she predeceased her husband or if she exercised her disclaimer option pursuant to § III(2)(b)(ii). In the event of either, the trustee was directed to merge the sum allocated for Trust Estate "A" into the principal of Trust Estate "B."
Trust Estate "B" consisted of the remainder of the trust property. Section III(2)(b)(ii) described Trust Estate "B" as having been "established for the benefit of grantor's said wife and lineal descendants as is hereinafter provided in Section V hereof." Section III(2)(c) directed the trustee to hold this estate for the "uses and purposes set forth in Section V of the trust agreement."
The crucial element of the trial court's ruling, and the crux of the present appeal, was that court's determination that, at Susan's death, the Insurance Trust failed for the lack of a beneficiary. Thus, her estate could not "pour over" into Trust Estate "B" at her death. Susan having provided for no other beneficiaries in her will, her estate descended to her heirs at law under the laws of intestate succession, Code of 1975, §§43-8-40, -42.
The trial court also held that the lack of a beneficiary at Susan's death also forced Trust Estate "B" to fail. That court held that Section V(9) of the trust instrument had no applicability because its reference to "any child . . . entitled to share" related back to Section V(5) and meant any child or children who were still alive at Susan's death. In the instant case, due to Code of 1975, § 43-7-2, all the children were presumed to have predeceased both parents. Since the trust instrument provided for no other contingent beneficiary, the court distributed the res of Trust Estate "B" to the grantor's heirs-at-law, the Gaffords, by intestacy.
The Gaffords contest the trial court's ruling. They argue that they were the intended beneficiaries of Section V(9) because the phrase "child . . . entitled to share" merely designated Catherine Louise Gafford, who was in being at the time of the execution of the trust agreement, and any other children subsequently born to or adopted by the grantor. They submit that *Page 1359 
this phrase served only to limit the class that it was intended to benefit and that it had no effect on the grantor's plans of distribution as evidenced by Section V(9) by which they were to have inherited his entire estate.
The positions of the parties thus ascertained, we can proceed with the pertinent clauses of Section V in the trust agreement.
Section V(1) provides:
 "The Trustee shall hold said Trust Estate 'B,' without division into shares, in trust for the use and benefit of Grantor's said wife, and Grantor's children, for and during the lifetime of Grantor's said wife. During the lifetime of Grantor's said wife, the Trustee shall pay over to Grantor's said wife, for her support and maintenance, the entire net income from said Trust Estate 'B,' in such installments as may be convenient to her." (Emphasis added.)
Additionally, Sections V(1) and (3) granted her limited rights to invade the corpus of Trust Estate "B" either for her maintenance or as an advance to her children in designated situations, "but any sum so advanced to any such child or descendant of a deceased child shall be a charge against any part of said Trust Estate 'B' to which such child or descendant of him or her may subsequently become entitled under the other provisions of this Trust Agreement." (Emphasis added.)
Section V(5) provides that, at the death of the income beneficiary (or at the grantor's death should Susan predecease him):
 "The Trustee shall apportion Trust Estate 'B' into as many equal parts as there are children of Grantor then living, or if any of Grantor's said children shall have predeceased Grantor's said wife, or Grantor, leaving lineal descendants then surviving, then the share of such deceased child shall be apportioned among such lineal descendants in equal shares per stirpes under the terms of section 7 hereof." (Emphasis added.)
Section V(6) states:
 "The Trustee shall hold the share of any such child entitled to share in said Trust Estate 'B' in trust for him or her until he or she shall attain the age of twenty-one (21) years, at which time one-half (1/2) of his or her share of said Trust Estate 'B' shall be transferred and paid over to him or her free from this trust. The Trustee shall hold the remaining one-half (1/2) share of any such child entitled to share in said Trust Estate "B" in trust for him or her until he or she shall attain the age of thirty (30) years, at which time the remaining one-half (1/2) of his or her share of said Trust Estate 'B' shall be transferred and paid over to him or her free from this trust." (Emphasis added.)
Sections V(7), (8), and (9) all begin with the identical phraseology:
 "In the event any child of Grantor entitled to share in said Trust Estate 'B' under the terms hereof shall die prior to the apportionment or distribution to him or her of all of his or her share of said Trust Estate 'B', leaving. . . .
 "[V(7)] any descendants of him or her then living, then at the death of such child, the Trustee, after first paying the expenses of his or her last illness and proper burial, shall transfer and pay over to the descendants then living of such child so dying, in equal shares per stirpes, the share of said Trust Estate 'B' then held in trust for such child so dying; . . .
 "[V(8)] no descendants of him or her then living, then at the death of such child, the Trustee . . . shall transfer and pay over the share of said Trust Estate 'B' then held in trust for such child so dying to such of Grantor's children, and the descendants of any deceased child of Grantor, as then are living, in equal shares per stirpes. . . .
 "[V(9)] no descendants of him or her, or of Grantor, then living, then at the death of such child, the Trustee shall transfer and pay over the share of said Trust Estate 'B' . . . to such person or persons as would be entitled to inherit the property constituting said share, and in the proportions in which they would be entitled to inherit the same from Grantor *Page 1360 
under the laws of Alabama then in force had Grantor died at such time a resident of Alabama intestate." (Emphasis added.)
Section (10), the last section under heading V, allows a disclaimer by:
 "any child of Grantor entitled to share in said Trust Estate 'B' . . . for any reason whatsoever . . . in whole or in part the property described hereinabove. In the event of such disclaimer . . . the Trustee shall transfer and pay over . . . to the descendants then living of such child making said disclaimer, in equal shares per stirpes, in accordance with the provisions of section 7 hereinabove, or if none, then such property shall pass to such of Grantor's children and the descendants of any deceased child of Grantor as then are living, in equal shares, per stirpes, in accordance with the provisions of section 8 hereinabove." (Emphasis added.)
 I.
We approach the questions to be decided mindful of certain principles that are well settled in this state. In any case before this Court involving the construction of wills or trusts, the cardinal rule is to ascertain the testator's/grantor's intent. City National Bank of Birminghamv. Andrews, 355 So.2d 341 (Ala. 1978). We have repeatedly referred to this intent as the polestar that guides us. Wileyv. Murphree, 228 Ala. 64, 151 So. 869 (1933).
In order to arrive at that intention, we must look to the instrument(s) as a whole rather than construing any one paragraph separately. Perdue v. Perdue, 294 Ala. 194,314 So.2d 280 (1975). Furthermore, we recognize that we should reconcile all the provisions of the instrument, if at all possible, to form a harmonious whole that effectuates the testator's intent.Davis v. Davis, 289 Ala. 313, 267 So.2d 158 (1972).
Having reviewed these documents in their entirety, we are convinced that provisos one through ten in Section V are interrelated and consistent with the testator's intent to provide his trustee with an orderly plan for the distribution of Trust Estate "B." This plan provides in Section V(1) for Trust Estate "B" to be held without division into shares for Susan's life, during which time she would be the income beneficiary. Sections V(1), (2), and (3) define her rights and limitations to invade the corpus of this trust during her lifetime; section V(4) imposes a corollary limitation on the trustee's right to invade the corpus during the lifetime of the income beneficiary.
By the terms of Section V, the first change in the makeup of the trust principal occurs after the death of the life income beneficiary. Section V(5) directs the trustee to apportion the principal, at that time, into as many equal shares as there are children then living. A share could also be created for a deceased child if that deceased child, at the time of apportionment, had any living lineal descendants, in which event the instrument referenced the trustee to Section V(7) in determining the method of distribution to these lineal descendants. Section V(6) sets out the terms by which the trustee could distribute these shares to the trust beneficiaries. Sections V(7), (8), and (9) provide the trustee with directions should any of three different contingencies, involving the death or deaths of the distributees, occur before these shares could be fully distributed. Section V(10) allows any of those entitled to share in the trust estate to disclaim their share and provides the trustee with directions by referencing him to V(8), should that contingency occur. Taken as a whole, we find that Section V provides a logical, consistent, and orderly plan that reflects the Grantor's stated intent to provide "for [his] wife and lineal descendants."
The question remains, however, whether any of the grantor's provisions in Section V provided for the contingency that in fact occurred. All the parties agree that the resolution of this question turns on the interpretation of the undefined phrase "child . . . entitled to share."
The phrase "child . . . entitled to share" appears in the trust instrument on five occasions in Section V in paragraphs (6), (7), (8), (9), and (10). In its first usage, at *Page 1361 
the beginning of paragraph (6), the grantor modifies this phrase with the adjective "such."
The appellants do not directly address this word in their brief; however, the appellees argue that this modifier refers the phrase to the previous paragraph and incorporates its longer designation of beneficiaries, to-wit: those children of the grantor (or the living lineal descendants of a predeceased child) who were living at either the death of the life income beneficiary or at the grantor's death should Susan have predeceased him.
We agree with the assessment of an earlier court when it wrote: "We cannot throw away the word 'such.' It is descriptive and limiting, referring always to a class just before pointed out." United States v. Pittman, 151 F.2d 851, 852 (5th Cir. 1945). Another source describes this word by stating:
 "In its natural and ordinary sense, and by grammatical usage, the word 'such' refers to an antecedent, some antecedent word of phrase, and, more specifically, to the last precedent antecedent, unless the meaning would thereby be impaired. Thus the word 'such' refers back to and identifies something previously spoken of, something that has gone before, something that has been specified. It always refers to a class just before pointed out, and should be construed as referring back to a common subject matter. It may be used as representing the object as already particularized in terms which are not mentioned, and it may indicate or suggest a person or thing originally specified by a name or designation."
83 C.J.S. Such (1953).
We note that the previous paragraph in Section V of this trust instrument does indeed refer to a class — those children to whom the trustee could apportion shares. Thus, the appellee's argument, in light of the grantor's use of the modifier "such," when taken alone, would appear to be a reasonable construction and consistent with the grantor's intent. Our decision, however, takes into consideration other factors which, when combined with the previous argument, persuade us that this construction is indeed the correct one.
The Gaffords argue that the phrase "child . . . entitled to share" is merely a "shorthand term used as a synonym for the grantor's daughter, Catherine Louise Gafford, and any other children hereafter born to or adopted by grantor." The Gaffords' construction of this phrase coincides with the written definition in all three documents of the term "child" or "children." The Gaffords, in urging their construction of the phrase, fail to answer why the grantor would not have simply used the already defined term "child" rather than his consistent use of the new phrase "child . . . entitled to share."
Able counsel drafted both wills and the trust agreement during the same time period to conform to the grantor's scheme of distribution of his estate. This gives rise to the legal presumption that the legal terms in the will are used in a legal sense; furthermore, this presumption is conclusive unless other language within the instrument indicates otherwise.Morris v. Gilbert, 285 Ala. 179, 230 So.2d 237 (1970). In reviewing these documents, we find no such limiting language.
The Gaffords, in their construction of this phrase, urge this Court to reject the grantor's words "entitled to share" as extraneous or unnecessary.
 "Rejection of words is an extreme and desperate remedy which the courts should adopt only as a last resort, when all other efforts to reconcile the language of the will have failed. . . . Words are never to be arbitrarily rejected or ignored as meaningless or repugnant, if by any reasonable construction they may be made consistent and significant. . . ."
95 C.J.S. Wills § 610 (1957).
We are not persuaded that these limiting words "entitled to share" should be summarily dismissed. Rather, we find that the construction that limits the distribution of Trust Estate "B" to only those children to whom the trustee could apportion a share is a reasonable and consistent construction and one that derives the grantor's intent *Page 1362 
from the plain usage of the entire phrase in question.
The reasonableness of this construction is further evidenced by the fact that paragraphs (6) through (10), in which this phrase appears, all deal with the distribution of the shares of Trust Estate "B" once these shares have been apportioned. Thus, they relate to the same subject or theme and not to unrelated contingencies, as the Gaffords contend.
Additionally, each of the paragraphs (6) through (10) begins with the same general phraseology, which includes the phrase "child . . . entitled to share." As noted previously, the beginning phraseology in paragraphs (7) through (9) is identical. Therefore, our determination that the grantor intended a congruent meaning of this phrase for each time he used it, including its use in Section V(9), does not "graft a phrase from one item to another," as the Gaffords contend. Rather, our construction incorporates the well-settled rule in this state that words are considered to have been used throughout the will in the same sense. Ide v. Harris, 261 Ala. 484, 75 So.2d 129 (1954).
Nor do we accept the Gaffords' contention that our construction renders the field of operation of paragraph V(9) meaningless because a child could never become "entitled to share in Trust Estate 'B' " and die before apportionment. They argue that this construction makes the occurrence of these times simultaneous.
While it is true with this construction that a child would not become "entitled to share in Trust Estate 'B' " until the death of the parents, nevertheless, the apportionment of each share could not occur until the trustee could ascertain the exact amount of the res in Estate "B." This amount would depend upon the administration of the estate of the last parent to die, due to the "pour over" aspects of his or her will. Second, should the grantor be the last to die, the apportionment would depend on the necessary collection of the proceeds of the various life insurance policies that principally funded this trust. Item VIII(2) of the trust instrument even empowers the trustee to take whatever action is necessary for this collection, including litigation. Therefore, the Gaffords' argument of the simultaneousness of these events fails, because there could be a significant lapse of time between the entitlement of the child to a share of this trust and its apportionment or distribution.
Nor does our construction of this phrase contravene the grantor's intent in Section V(3) as the Gaffords suggest. This paragraph allows the life income beneficiary to advance sums from the trust principal to any child for certain prescribed purposes. The Gaffords contend that this provision supports their argument that the rights of the child to this trust vested at birth. This argument might be persuasive but for the last part of this paragraph, which states:
 "[B]ut any sum so advanced to any such child or descendant of a deceased child shall be a charge against any part of said Trust Estate 'B' to which such child or descendant of him or her may subsequently become entitled under the other provisions of this Trust Agreement."
(Emphasis added.)
The remainder of the Gaffords' arguments in support of their meaning of this phrase rely heavily on three rules of construction: (1) The rule that trust instruments should be upheld; (2) the rule that the construction of trusts should be guided by the intent of the grantor; and (3) the rule of construction against partial intestacy.
The validity of the trust is not at issue in this case. The issue is whether, by the terms of this instrument, the grantor anticipated and provided for the contingency that in fact occurred.
Likewise, the rules of construction against partial intestacy have no bearing in the instant case. While it is true that partial intestacy may result in the event that Gafford's trust did not provide for this contingency, nonetheless, these rules of construction against partial intestacy do not engraft upon us the license to rewrite the terms of this instrument just to avoid this result. Perdue v. Roberts, 294 Ala. 194,314 So.2d 280 (1975). Rather they *Page 1363 
serve as an aid in ascertaining the intent of the testator/grantor. Weil v. Converse, 273 Ala. 495, 142 So.2d 245
(1962). Furthermore, "these, and all other rules of construction, are subordinate to the cardinal rule that the intention of the testator must be ascertained and given effect. They are useful only in aid, not in contravention, of that controlling purpose." Achelis v. Musgrove, 212 Ala. 47, 49,101 So. 670, 672 (1924).
For the aforementioned reasons, we hold that the grantor intended for the phrase "child . . . entitled to share," as found in paragraphs (6), (7), (8), (9), and (10) of Section V of this trust instrument, to relate back to paragraph (5) and describe only those children of the grantor who survived the last to die of William or Susan Gafford.
 II.
Having resolved the first issue in this appeal, we will briefly address the parol evidence question.
It is well settled in this state that extrinsic evidence is not admissible if the instrument, on its face, is clear and unambiguous, Morris v. Gilbert, 285 Ala. 179, 230 So.2d 237
(1970), or if the ambiguity within the instrument is a patent one, Martin v. First National Bank of Mobile, 412 So.2d 250
(Ala. 1982). Extrinsic evidence is admissible only in the case of a latent ambiguity. Perdue v. Roberts, 294 Ala. 194,314 So.2d 280 (1975).
 "A latent ambiguity is to be distinguished from a patent ambiguity. A patent ambiguity is not a true ambiguity; it is merely confusion created on the face of the will by the use of defective, obscure or insensible language. On the other hand, a latent ambiguity occurs where the language is clear and intelligible, but when considered in light of certain extraneous facts, it takes on a multiple meaning."
Jacoway v. Brittain, 360 So.2d 306, 308 (Ala. 1978).
The Gaffords attempted to introduce extrinsic evidence by way of an affidavit from the lawyer who drafted the wills and trust instrument which purportedly would explain the phrase "child . . . entitled to share." They argued to the court below and here on appeal for the admission of this evidence because the phrase in question was a latent ambiguity. The trial court considered the proffered evidence but refused to admit it after the court determined that the ambiguity was patent.
The Gaffords, in arguing the error of this ruling, rely principally on the case Fraley v. Brown, 460 So.2d 1267
(Ala. 1984). Fraley stands for the proposition that "parol evidence may be introduced to reveal a latent ambiguity in a writing which appears, on its face, to be clear and unambiguous." (Emphasis in original.) 460 So.2d at 1269. Should this evidence convince the trial court that, when otherwise clear language in the instrument, by its application, might take on multiple meanings or refer to multiple parties, then the court can admit this parol evidence to clear up that ambiguity. Id.
The Gaffords' reliance on Fraley, however, is misplaced. The ambiguity in question arises out of the grantor's failure to define the phrase or to specify its meaning and has existed since the execution of the instrument. This ambiguity reflects an inadequacy inherent on the face of the document; it does not arise out of the attempted application of what otherwise is clear and unambiguous writing. Therefore, we agree with the trial court's determination that this ambiguity is patent and, thus, that extraneous evidence to explain it is inadmissible.
We also find that the evidence would have been inadmissible due to its content even if the court had determined that a latent ambiguity existed, because this affidavit does not address the meaning of the words employed by the grantor. Rather, it addresses what the grantor, or his lawyer, intended to say. The general rule on the admissibility of parol evidence is that:
 " 'Such evidence is received, not for the purpose of importing into the writing an intention not expressed therein, but simply with the view of elucidating the meaning of the words employed; and in its admission, the line which separates *Page 1364 
evidence which aids the interpretation of what is in the instrument, from direct evidence of intention independent of the instrument, must be kept steadily in view; the duty of the court being, to declare the meaning of what is written in the instrument, not of what was intended to be written.' Hughes v. Wilkinson, 35 Ala. 453. . . ."
Gibson v. Anderson, 265 Ala. 553, 555-56, 92 So.2d 692, 694-95
(1956) (emphasis in original). See also Achelis v. Musgrove,212 Ala. 47, 101 So. 670 (1924).
It follows, therefore, that the decree of the trial court is to be affirmed and that the distribution of the estates of William and Susan Gafford and Trust Estates "A" and "B" shall be pursuant to the order below. It is so ordered.
AFFIRMED.
MADDOX, ALMON, ADAMS and HOUSTON, JJ., concur.