SHORES, Justice.
Jerry R. and James F. Williams, residual legatees, appeal from a judgment in favor of Charlene Knight Faucett, Frankie Faye Faucett Schoel, Charles Faucett, specific legatees, and Citizens National Bank of Shawmut (“Bank”), mortgagee of an interest in certain land; in that judgment the court ordered certain lands sold to satisfy specific bequests and to pay debts of the estate.
Dollie Mae Finch, a widow, died on April 26, 1983, leaving a last will and testament that provided, in pertinent part:
“ITEM 1
“I direct that all of my just debts be paid by my Executor, hereinafter named, as soon after my demise as can conveniently be done.
*574 “ITEM II
“I give and bequeath to my niece, FRANKIE FAYE FAUCETT, and to my nephew, CHARLES FAUCETT, the sum of ONE THOUSAND — ($1,000.00)— DOLLARS each.
“ITEM III
“I give and bequeath to my sister, CHARLENE KNIGHT FAUCETT, if she is living at the time of my death, a sum equal to 10% of the appraised value of my estate as accepted by the Internal Revenue Service on my estate tax return.
“ITEM IV
“I give and bequeath to my sister, MARY KNIGHT WILLIAMS, if she is living at the time of my death, a sum equal to 10% of the appraised value of my estate as accepted by the Internal Revenue Service on my estate tax return.
“ITEM V
“All the rest, residue and remainder of my estate, real, personal or mixed, of which I shall die seized and possessed, or to which I may be entitled at the time of my death, I give, devise and bequeath to my two nephews, namely: JAMES F. WILLIAMS and JERRY R. WILLIAMS, to have and to hold, absolutely and forever, share and share alike.
“ITEM VI
“I nominate, constitute and appoint my nephew, JERRY R. WILLIAMS, to be the Executor of my estate and of this my Last Will and Testament, and I hereby exempt him from making any official bond for the faithful performance of his duties as such Executor; and I further exempt him from filing any inventory of my estate and from making any report to any court of the land. I further authorize and empower my said Executor to sell at public or private sale any or all of the property of which I shall die seized and possessed, at such time and price and upon such terms and conditions (including credit) as he may determine and to distribute the proceeds as in this Will set out; and I direct that in the exercise of such powers he shall be free from the supervision and control of the Probate Court and any other court.”
Mary Knight Williams predeceased Dollie Mae Finch and, therefore, did not take under the will.
The will was admitted to probate on June 14, 1983, and letters testamentary were issued to Jerry Williams as the executor.
The Finch estate consisted of household furnishings, farm equipment, various other personalty, and certain lands located in Lee and Chambers Counties. A mortgage covering a parcel of the Lee County property was foreclosed upon. Pursuant to the probate court’s authorization, the executor sold the other Lee County property to satisfy some of the estate debts. Thus, the only real property remaining in the estate is approximately 840 acres of land in Chambers County; that land is the subject of this action.
A stipulation regarding the amount of money bequeathed by item III in the will was entered into between the executor and Charlene Knight Faucett,. which provided, in pertinent part:
“Williams and Faucett hereby stipulate that said ITEM III entitles Faucett to a devise and bequest (hereinafter, the “Bequest”) equal to ten percent (10%) of the appraised value of the total gross estate of Dollie Mae Finch as indicated on line 1 of page one of the Federal Estate Tax Return for the Estate of Dollie Mae Finch, as accepted by the Internal Revenue Service. In addition, the Bequest shall not be reduced due to indebtedness, administrative expenses, attorneys’ fees or other costs of the Estate of Dollie Mae Finch.”
Under this stipulation Charlene Knight Faucett’s bequest totalled $55,438.30.
The established debts of the estate to-talled $45,300. The Bank held a mortgage in the amount of $94,685.51. However, the Bank’s mortgage covered only Jerry Williams’s residuary interest in the estate.
*575 Neither the bequests nor the remaining estate debts were satisfied during the 4-5 years following the issuance of the letters testamentary. Attempted sales of parcels of the approximately 840 acres were unsuccessful, and the legatees could not agree on a partition in kind.
On June 24, 1987, Charlene Knight Fau-cett filed a petition to sell the 840 acres for division to satisfy her claim against the estate, contending that an equitable partition in kind was impossible. The petition was amended, joining the other legatees, Frankie Faye Faucett Schoel and Charles Faucett, and requesting that interest accrue on their bequests until they were paid.
On the date the hearing on the petition was held, the executor, acting pro se, filed an answer demanding a jury trial, and averring that the stipulation regarding the value of the bequest in item III of the will did not provide for the accrual of interest and that a sale on the courthouse steps would not result in the estate’s receiving a fair price for the property. He also filed a motion for change of venue and a motion for the trial judge to recuse. The motion to recuse was premised upon the fact that all judges of the Fifth Judicial Circuit, which included Chambers County, had been recused in an underlying case in which Jerry Williams and Charlene Knight Fau-cett sued a Chambers County attorney who was allegedly involved in securing the $94,-685.51 loan from the Bank, as to which the 840 acres was mortgaged as security.[1]
The trial court refused to grant the jury demand, and denied the motions. After the hearing, the court found that the personalty had a market value of approximately $15,000 and that the 840 acres had a market value of approximately $294,000. The trial court entered a judgment ordering the sale of the estate property and payment of the bequest and estate debts.
The real property was purchased at the judicial sale for $255,000.[2] The trial court confirmed the sale, and ordered the proceeds disbursed to pay the claims against the estate and the expenses of the sale. The remainder of the sale proceeds were paid into the court for disbursement to Jerry and James Williams, the residuary beneficiaries.
James and Jerry Williams appeal, contending that the trial court erred in ordering the estate property sold and in ordering that interest accrue on the bequests. We disagree. The trial court’s judgment, in pertinent part, reads:
“This is an action (i) to compel the Executor herein, Jerry R. Williams, to pay the Plaintiffs [Charlene Knight Faucett, Frankie Faye Faucett Schoel, and Charles Fau-cett] their legacies under the Will of Dollie Mae Finch (the ‘Will’) together with interest thereon pursuant to Code of Alabama 1975, §§ 43-2-580 through 42-2-585 [43-2-585]; and (ii) for the sale of the personalty and the realty of the Estate of Dollie Mae Finch (the ‘Estate’) for cash for division of the proceeds among the owners thereof pursuant to Code of Alabama 1975, §§ 35-6-20 through 35-6-23. Service has been perfected on all named Defendants, and the time allowed each Defendant to answer under the Alabama Rules of Civil Procedure expired in December, 1987. Defendant, Jerry R. Williams, was served with a Citation within 10 days prior to the hearing date in accordance with Code of Alabama 1975, § 43-2-582. This matter came on to be heard on March 16, 1988, the day regularly set therefor. The Plaintiffs were represented by Edgar C. Gentle, III, Defendant Citizens National Bank of Shawmut (the ‘Bank’) was represented by William A. Cleveland and Defendant James F. Williams was represented by Donna Henderson Beard. Defendant, Jerry R. Williams, appeared pro se.
“The Court proceeded to take testimony in Open Court, and upon consideration thereof, the Court makes the following conclusions and findings:
*576 “1. With respect to Plaintiffs’ prayer that the Executor be compelled to pay them their legacies, the Court notes that five (5) elements must be established to grant this relief: (i) the Plaintiffs must be legatees under the Will; (ii) six (6) months must have expired from the grant of Letters Testamentary to the Executor; (iii) there must be more than sufficient assets in the hands of such Executor to pay the debts of the deceased; (iv) after the payment of the legacies to the Plaintiffs, there will be a sufficiency of assets to pay off the debts which have been presented against the Estate, and charges and other legacies which are entitled to priority over the plaintiffs’ legacies; and (v) the Plaintiffs, as legatees, must each execute a refunding bond. Code of Alabama 1975, §§ 43-2-580 to -585.
“2. The first element has been met herein.... [T]he Will, and the testimony of the Executor both indicate that each of the Plaintiffs is a legatee under the Will.
“3. The second element also has been met. Plaintiffs’ Exhibits 3 and 4 and the testimony of the Executor established that the Executor was granted Letters Testamentary on June 14, 1983, or almost five years ago, and certainly more than six months have expired since the date of such Letters.
“4. The third element, a sufficiency of assets in the Estate to pay the debts of the deceased, also has been met herein. The testimony of the Executor, Jerry R. Williams, indicated that there are two assets in the Estate, (i) the so-called Home Place, consisting of 840 acres, more or less and situated in Chambers County ...; and (ii) personalty_ [T]he assets in the Estate are worth approximately $309,440.00 and the established debts against the Estate total $45,300.00 [this amount of the estate debts did not include the $94,685.51 debt to the Bank], so that the value of the assets clearly exceeds the amount of the debts, meeting the third element.
“5. The fourth element herein, namely a sufficiency of assets to pay all of the debts of the Estate and charges and legacies due to priority of payment, after the payment to the Plaintiffs of their legacies, also has been met herein. The legacies of the Plaintiffs are general legacies and are therefore entitled to priority of payment over the residuary legacies of the Williams Brothers. Gilmer’s Legatees v. Gilmer’s Executors, 42 Ala. 9, at 16 (1868); and Austin v. Pepperman, 278 Ala. 551, at 566, 179 So.2d 299 (1965). Moreover, Ronald Mize testified on behalf of the Bank to the effect that the Bank only claims a mortgage on the interest of one of the residuary legatees, Jerry R. Williams, in the Home Place. Thus, there are no charges or legacies that are entitled to priority of payment over the Plaintiffs’ legacies. The Will, ... and the testimony of Jerry R. Williams, established that the principal amount of the bequest due Charles Faucett and Frankie Faye Fau-cett Schoel is $1,000.00 each. With respect to the bequest to Charlene Knight Faucett, the Stipulation of the Executor, ... and the Will established that the principal amount thereof is equal to 10% of the appraised value of the total gross estate of Dollie Mae Finch as indicated on Line 1 of Page 1 of her Federal Estate Tax Return.... [T]he total gross estate for federal estate tax purposes was $554,383.00, so that 10% thereof is $55,438.00, the principal amount of Charlene Knight Faucett’s bequest. This interpretation of the bequest to Charlene Knight Faucett is in accordance with the case of Ide v. Harris, 261 Ala. 484, at 490 [75 So.2d 129] (1954), which recites the well-established rule that “words used in a will should be given their usual and ordinary meaning.” The fact that Charlene Knight Faucett’s bequest is not in the residuary clause also underscores the intention of the testatrix that the bequest given to Charlene Knight Faucett should not be diminished by debts or expenses. Meadow v. Moore, 58 N.C. 54 (1859); Bardwell v. Bardwell, 27 Mass. 19 (1830); and Currier v. Currier, 70 N.H. 145, 47 A. 94 (1900). As general legatees, the Plaintiffs are also entitled to interest on their bequests commencing six months after Letters Testamentary were issued, or from December 14, 1983. Hallett and Walker v. Allen, 13 Ala. 553 at 556, 558 and 559 (1848), with the rate being 12% per annum. Code of Alabama 1975, § 8-8-10. In summary, *577 the bequests to Plaintiffs are as follows: (i) $1,000.00 plus 12% per annum commencing on December 14, 1983 and continuing until paid to Charles Faucett; (ii) $1,000.00 plus 12% per annum commencing on December 14, 1983 and continuing until paid to Frankie Faye Faucett Schoel; and (iii) $55,438.00 plus 12% per annum commencing on December 14, 1983 and continuing until paid to Charlene Knight Faucett. As of the date of the hearing, therefore, the total amount of the legacies due Plaintiffs in principal and interest was $86,732.00. Thus, after payment to Plaintiffs of their $86,732.00 due as of the hearing date, the evidence shows that there would be approximately $222,708.00 remaining to pay debts, or more than sufficient remaining assets to pay the $45,300.00 claimed against the Estate and the $94,685.51 claimed by the Bank against the residuary interest of Jerry R. Williams.
“6. With respect to a refunding bond, counsel for Plaintiffs indicated in Open Court that the Plaintiffs have already prepared the necessary refunding bonds and will file them immediately upon payment of Plaintiffs’ legacies herein, meeting the final element for compelling the Executor to pay Plaintiffs their legacies.
“7. In conclusion, Plaintiffs have met all the elements necessary to entitle them to compel the Executor to pay them their legacies.
“8. The Court notes that Code of Alabama 1975, § 43-2-585 contemplates requiring the Executor to pay Plaintiffs their legacies within 60 days after his being ordered to do so. However, in this case, Plaintiffs cannot be paid their legacies until after the realty and personalty of the Estate are sold pursuant to this Judgment, and after such sale is confirmed by this Court, which may or may not occur within 60 days from the date of this Judgment.[3] This is a Court of Equity, and equity suffers no right to be without a remedy. St. Paul Fire and Marine Insurance Company v. Cox, 583 F.Supp. 1221 [N.D.Ala.], aff’d, 752 F.2d 550 (11th Cir.[1985] 1984). Accordingly, this Court finds it to be appropriate for the Plaintiffs to be paid by the Commissioner herein the principal amount of their bequests, together with interest, following the sale of the realty and personalty herein, and following the Court’s confirmation of the sale, as part of the Commissioner’s disbursements pursuant to the sale confirmation Order.
“9. In order to justify the second aspect of Plaintiffs’ requested relief, a sale for partition of the personalty and the Home Place herein, six items must be established: (i) the Home Place in the Estate must be located in Chambers County, Alabama; (ii) the Home Place and the personalty must be described with the certainty required for judicial sales; (iii) the Plaintiffs must have an interest in the personalty and the Home Place to be sold; (iv) all those with an interest in the Home Place and the personalty to be sold must be parties; (v) it must be established that the personalty and the Home Place cannot be divided equitably without a sale thereof; and (vi) the interests of all parties in the personalty and the Home Place must be determined.
“10. With respect to the first item, the testimony of William R. Dean established that the Home Place is, indeed, located in Chambers County, Alabama.
“11. The second item has been met. Plaintiffs described the Home Place with the particularity required for judicial sales.... In addition, Plaintiffs’ Exhibit 5 ... describes the personalty with the accuracy required of judicial sales.
“12. As previously found, the value of Plaintiffs’ bequests and interests in the Estate total approximately $87,000.00 at this time. Since the only assets in the Estate are personalty worth approximately $15,440.00 and realty worth approximately $294,000.00, Plaintiffs as beneficiaries under the Will have an interest in the personalty and the Home Place to be sold, meeting the third element. Dent v. Foy, 206 Ala. 454, at 456 [90 So. 317] (1921); Phil *578 lips v. Smith, 214 Ala. 382, at 382-383 [107 So. 841] (1926); and Copeland v. Copeland, 242 Ala. 507, at 510 [7 So.2d 87] (1942).
“13. This Court finds that the fourth item for a sale for partition, requiring that all parties interested in the property to be sold be made parties, has also been satisfied. All beneficiaries under the Will as well as the Bank, the only known encum-brancer of the property to be sold, have been made parties. The testimony of Mr. Ronald Mize for the Bank confirmed that there are no known additional encumbranc-ers of the Estate’s property other than the Bank.
“14. The fifth element for a sale for partition, inability equitably to divide the property without a sale, has also been met. With respect to the personalty, testimony by Jerry R. Williams and James P. Williams indicated that some of this property has declined in value and some of it is of uncertain location. Moreover, the Executor confirmed under examination that he has refused to make this property available to counsel for Plaintiffs for inspection and appraisal. Therefore, it would be inequitable to divide the personalty among the Will beneficiaries and it would be more just and reasonable to have it sold for division. Concerning the Home Place, the expert testimony of William R. Dean established four separate grounds indicating that the land cannot be equitably divided and therefore must be sold. First, part of the Home Place is a homestead with a house on it and the rest is not. Second, the land varies in its use and quality, some having a homestead, some being agricultural land, some being large swampy tracts and some being pulpwood timberlands. Third, some of the land has highway frontage and some does not, with more remote portions of the Home Place being up to three-fourths of a mile away from a highway. Fourth, the interests of the Will beneficiaries in the Home Place vary markedly, with Charles Faucett and Frankie Faye Faucett Schoel having a very small interest in the Home Place and with Charlene Knight Faucett being entitled to substantially more. All four bases for ordering a sale for partition of the Home Place have clear support in the case law. English v. Brantley, 361 So.2d 549, at 552 (Ala.1978); Newton v. Byess, 423 So.2d 1360, at 1362 (Ala.1982); Cotton v. McMurtry, 440 So.2d 1039, at 1041 (Ala.1983).
“15. In satisfaction of the sixth and final element for a sale for partition, this Court has determined the interests of each of the parties in the property to be sold.... [T]his Court finds ... that the Will leaves James F. Williams and Jerry R. Williams one-half each of the residue remaining after the payment to Plaintiffs of their bequests, with the residue being subject to debts of the Estate in accordance with Austin v. Pepperman, supra at 566. The Bank’s testimony established that there is a debt due and owing to it in the amount of $94,685.51 and the Bank only claims a mortgage on the interest of Jerry R. Williams in the Home Place to satisfy this debt. Hence, the Bank shall be paid out of the proceeds of the sale of the Home Place attributed to Jerry R. Williams’ residuary bequest.
“16. Having established the interest of each owner and encumbrancer of the property to be sold, the Court can know how to distribute the proceeds of the sale.... Out of Jerry R. Williams’ one-half [residuary interest], $94,685.51 will be paid to the Bank to discharge and satisfy its mortgage .... The remaining expenses of the Estate, namely (i) the grave marker for $300.00; (ii) the attorneys’ and commissioners’ fees in connection with the sale and division of approximately $15,000.00; (iii) appraisal fees to the Dean Agency, Inc. for $5,000.00; and (iv) Executor's commissions, if any, of up to $25,000.00, will be paid from the residue, with each of the two Williams Brothers paying one-half of such expenses to the extent possible....
“17. In conclusion, this Court finds that all of the elements necessary for a sale for partition of the personalty and the Home Place of the Estate have been met by Plaintiffs.”
We find no error justifying reversal, and we affirm the judgment. Sieben *579 v. Torrey, 252 Ala. 675, 42 So.2d 621 (1949). The property was purchased by a stranger for a price of approximately 90% of its appraised value. The sale was properly advertised in accordance with Code 1975, § 35-6-47, and there is no evidence of fraud, collusion, or other impropriety in the way the sale was conducted by the commissioner. On the facts of this case, the trial court did not abuse its discretion in confirming this sale. Furthermore, the trial court did not abuse its discretion in awarding the commissioner a $15,000 fee plus his expenses in conducting this sale. See, Sanford v. Sanford, 355 So.2d 365 (Ala.1978). The expenses were not unreasonable and were directly related to marketing and preparing the property for sale. The $15,000 fee awarded to the commissioner for legal fees was likewise not unreasonable, considering the complexity of this litigation and the rule set forth in Sanford, supra.
Counsel for James Williams contends that the trial court erred in not appointing a guardian ad litem for James, who is allegedly incompetent, in order to protect his interest in the estate. This contention is without merit. Rule 17(c), A.R.Civ.P., provides, in pertinent part:
“The court shall appoint a guardian ad litem ... for an incompetent person not otherwise represented in an action and may make any other orders it deems proper for the protection of the ... incompetent person.”
A review of the record indicates that James was diligently represented by able counsel from the beginning of the case through this appeal. Rule 17(c), A.R.Civ.P., did not impose on the trial court a duty to appoint a guardian ad litem. See, Meriwether v. Brown, 390 So.2d 1042 (Ala.1980). James’s representation by counsel both at trial and on appeal has adequately protected his interest and satisfied the requirements of Code 1975, §§ 43-2-445 and -504.
Jerry Williams contends that the trial court erred in denying the motions to re-cuse and to change venue, and in denying the demand for a jury trial. We disagree.
Where the subject matter of an action is real property, the action must be brought in the county where the real property or a material portion thereof is located. Rule 82(b)(1)(B), A.R.Civ.P. Because the 840 acres is located in Chambers County, venue was proper.
Regarding the denial of the motion to recuse, we note that the causes for disqualification of a judge are those affecting: (1) his individual rights, (2) his direct pecuniary interest, and (3) any interest the probable and natural tendency of which is to create bias in the mind of the judge for or against a party to a suit. Moulton v. Byrd, 224 Ala. 403, 140 So. 384 (1932). The record in this case lacks any indication that the trial judge’s individual or pecuniary interests were affected by this lawsuit. However, Jerry Williams contends that his and Charlene Knight Faucett’s suit against a local attorney in an underlying case (regarding the execution of the mortgage in favor of the Bank), in which all of the judges in the Fifth Judicial Circuit were recused, has created a bias that denied him a fair and impartial trial. The potential for bias caused by the underlying case is not present in this case. The attorney who was a party in the underlying case is not a party to, nor involved in any way with, the instant case. Also, Jerry Williams and Charlene Knight Faucett, who were plaintiffs in the underlying case against the local attorney, are adverse parties in this case; that fact negates any tendency for the trial judge to be prejudiced for or against either party. Furthermore, the record is devoid of any indication of such alleged bias.
After considering the evidence and arguments presented by the parties herein, we conclude that the judgment of the trial court is due to be affirmed.
AFFIRMED.
JONES, ADAMS, HOUSTON and KENNEDY, JJ., concur.

. In its pleadings, the Bank averred that its security interest under the mortgage was only in Jerry Williams's residuary interest in the Finch estate, and not in the 840 acres as a whole.

. Although the trial court ordered the personalty sold, the Williams brothers failed to make it available for inspection or sale, and, therefore, it was not sold by the commissioner.

. Payment of the bequest did not occur until approximately 70 days after entry of the judgment.