ADAMS, Justice.
This is an appeal by the defendants, Grover and Dorothy Marie Robinson (hereinafter “the Robinsons”) from a judgment requiring them to pay money on a promissory note executed in favor of the plaintiff, the Bank of Heflin (hereinafter “the bank”). On appeal, the Robinsons argue that the trial court committed error when it admitted certain evidence, when it excluded certain other evidence, and when it charged the jury. We disagree and affirm.
The problems concerning the Robinsons’ bank account and promissory note occurred as a result of embezzlement by one of the bank’s loan officers, William David Robinson (hereinafter “David Robinson”). David Robinson is a former football star who, because of an injury, returned to Heflin in 1972 to work for the Bank of Heflin in the area of public relations and marketing. The bank later trained him as a loan officer, and in 1976 he began making loans.
On August 6, 1982, one of David Robinson’s customers came to the bank to see him. David Robinson was on vacation, so another loan officer helped the customer. Because the loan officer was unfamiliar with the customer’s account, the loan officer checked the customer’s file in order to determine his present indebtedness. The loan officer noticed a discrepancy between *46 the file and what the customer said he actually owed. Because of this discrepancy, the bank authorized a special team to investigate the cause of the discrepancy. Prom their search, the investigators discovered that a number of David Robinson’s loans had discrepancies.
On August 9, 1982, the bank confronted David Robinson with its discoveries. He thereupon admitted embezzlement. It was estimated that he had embezzled between $800,000.00 and $450,000.00 from the bank. On August 24, 1982, representatives of the bank met with David Robinson and his attorney in order to determine the loans that were legitimate and the loans that were used to cover his embezzlement. It was at this meeting that David Robinson was first asked about the Robinsons’ account. He told the bank that all of the Robinsons’ notes were legitimate except one note for $1,500.00.
Because the bank was not completely sure of David Robinson’s veracity concerning the accounts, it conducted another meeting with him on September 2, 1982. However, at this meeting he became uncooperative. As a result of his uncoopera-tiveness, the bank conducted another investigation, which took about nine months.
From this investigation, the bank determined that David Robinson had manipulated 70 customers’ accounts in order to embezzle from the bank. During its investigation, the bank talked with each of the 70 customers in order to enlist their help with this matter. Sixty-eight of the 70 cooperated. The Robinsons did not.
Initially, however, Grover Robinson, who was a longtime customer of the bank, cooperated. On August 16,1982, Grover Robinson met with Wendell Gibbs, executive vice-president of the bank. Gibbs showed Grover Robinson his file and then had the investigative team make copies of Grover’s transactions. The bank claims that from the beginning of its meeting with Grover, it informed him that it only expected him to pay what he actually owed. However, the bank stated that because of David Robinson’s unreliability, it was unable to determine exactly the amount that the Robin-sons owed and, therefore, that it needed the Robinsons’ help.
Grover met with Gibbs again on August 26, 1982. Gibbs asked him to inspect all the notes bearing his name and asked if he could verify any of the signatures and if so, whether he had received any money represented by the notes. The bank told him that if he had not received some or all of the proceeds, he could sign an affidavit so stating and then his account would be reduced to the level of his actual indebtedness. However, Grover refused to verify whether he received any proceeds, and he refused to sign the affidavit.
On September 29, 1982, F. Timothy McA-bee, the bank’s counsel, wrote a letter to the Robinsons’ attorney, Ralph E. Coleman, requesting that Coleman furnish to the bank the amount actually owed by the Rob-insons. McAbee wrote three more letters to Coleman requesting this information, and he asked for a meeting between the bank and the Robinsons. Coleman wrote back to McAbee on December 22,1982. On December 28, 1982, McAbee acknowledged receipt of the letter and again asked for a meeting between the bank and the Robin-sons. McAbee wrote another letter to Coleman. On February 17, 1983, McAbee informed Coleman that the bank was unable to conclude its investigation until it met with the Robinsons. On March 10, 1983, McAbee again wrote Coleman, stating the same terms. McAbee wrote another letter on May 17,1983. On June 6,1983, Coleman wrote McAbee and apologized for not setting up a meeting. On October 26, 1983, McAbee wrote Coleman and informed him that the bank was filing suit against the Robinsons unless a meeting could be set up in order to determine the Robinsons’ true debt. Coleman wrote to McAbee on November 7 and 17, 1983, regarding a proposed meeting. On November 29, 1983, McAbee wrote Coleman and informed him that if the Robinsons desired, he would set a meeting in Heflin, Alabama. On January 5, 1984, McAbee wrote Coleman and informed him that the bank was filing suit.
From September 1982 until May 1985, the Robinsons attempted only once to talk *47 with someone from the bank. In November 1983, Grover Robinson went to Birmingham to see McAbee; however, he failed to notify McAbee of his plans and the meeting did not take place. Grover Robinson’s last payment on his notes was in July 1982.
The bank filed suit against the Robinsons on June 12, 1984. The case proceeded to trial on May 5-8, 1986. At trial, the bank, through its witnesses, demonstrated a “paper trail” showing how much the Robin-sons owed. The bank first demonstrated that the Robinsons received proceeds from a loan, showing that by deposit tickets evidencing the deposit of the funds in the Robinsons’ account. The bank’s only difficulty was the purported cash outlays from the loan proceeds. Unless Grover Robinson had acknowledged in his deposition that he did in fact receive the money, the bank assumed that David Robinson embezzled the money. From its approach, the bank gave the Robinsons a credit of $16,-000.00 in principal and $4,860.91 in interest paid on their notes. However, because the Robinsons refused to sign an affidavit and to cooperate, the bank asserts, it had to file a protective claim with its bonding company. The bank’s primary witness established that the Robinsons were in default on two notes: one for $24,484.02 and one for $918.67, totaling $25,402.69.
The Robinsons had filed a counterclaim against the bank, alleging a breach of fiduciary duty, damage to their reputation, negligence in the operation of the bank, abuse of process, and wantonness. At the end of the trial and after the trial court had instructed the jury, the jury returned a verdict in favor of the bank in the amount of $25,402.69. The jury also found in favor of the bank on the Robinsons' counterclaim.
I.
The Robinsons argue that the trial court erred when it excluded evidence pertaining to a mortgage executed by the Rob-insons to a third-party bank, Home Federal Savings Bank (hereinafter “Home Federal”). The Robinsons secured a loan from Home Federal in the amount of $40,000.00. The Robinsons argue that the bank’s agent, David Robinson, had informed them that the money from that Home Federal loan would be applied to the Bank of Heflin notes presently sued upon; but that instead he misapplied the money to the Rob-insons’ other note in order to hide his embezzlement. However, the Robinsons also claim that David Robinson also represented to them that he would consolidate all of their loans and that he would deal with Home Federal in order for them to procure the loan from Home Federal. They argue that by consolidating the Bank of Heflin loans and applying to those loans the proceeds from the Home Federal loan, the debt at the bank was to be paid off and then Home Federal would become the sole mortgagee as to the Robinsons’ property. The Robinsons tried to introduce evidence that the bank and Home Federal both had a mortgage on their property and that the two banks had entered into a subordination agreement giving Home Federal’s mortgage priority.
The Robinsons presented no evidence to support their claim that there was an agreement between them and David Robinson and the Bank of Heflin by which their mortgage or mortgages to the Bank of Heflin were to be satisfied. The Robinsons claim in their brief: “Had the Court allowed the Defendant to proceed, this Defendant might have shown that an agreement was reached between the loan officer at the Bank of Heflin and Home Federal, that pursuant to this agreement $40,000.00 would be transferred to the Bank of Heflin which was to be applied to the mortgage made the basis of the suit....” (Emphasis added.) Their argument is based upon conjecture and is speculative. The Robinsons’ claim of what the trial court excluded is overly broad. Both sides were allowed to present evidence concerning the proceeds received from Home Federal. The trial court excluded evidence concerning the mortgage from the Robinsons to Home Federal and the subordination agreement between Home Federal and the bank. The Robinsons were allowed to present evidence of their mortgage with the bank and evidence that the bank had not “satisfied” *48 their mortgage. The trial court permitted the Robinsons to introduce a check for $40,000.00 issued by Home Federal made out to the Robinsons and the bank. Furthermore, the bank, through testimony of its employees, showed how the proceeds of that check were disbursed and were applied to pay off two of the Robinsons’ notes and to substantially reduce another note.
In the present case, the trial court correctly concluded that whatever agreement was reached between the bank and Home Federal was not relevant to the Robinsons’ claims or to the bank’s claims. The determination of whether the evidence is material, relevant, or remote rests largely with the trial court, and its determination will not be overturned unless an abuse of discretion has been shown. Ryan v. Acuff, 435 So.2d 1244 (Ala.1983). The subordination agreement between the bank and Home Federal could have affected only the priority of the mortgages as between the two banks. The Robinsons do not set forth, and we do not find, any support for this claim that the subordination agreement was relevant to their claim. In addition, while the Robinsons make an argument based on what might have happened if the proceeds had been applied differently, their argument is one of speculation and conjecture. We find no error in the trial court’s exclusion of this evidence.
II.
The Robinsons next argue that the trial court erred when it charged the jury on the issue of agency. The Robinsons argue that the charge was erroneous because, they say, David Robinson’s acts of embezzlement were committed within the line and scope of his employment. The Robinsons objected to the following portion of the court’s oral charge:
Now, it’s the law that if an employee is involved in criminal activity wholly for the employee’s own purposes, that criminal activity is not within the line and scope of the employee’s employment. That statement of law is subject to the other aspects of agency law that I have been giving you.
In order for the bank not to be liable for the acts of David Robinson, it must show that David Robinson acted solely from personal motives. Plaisance v. Yelder, 408 So.2d 136 (Ala.Civ.App.1981). However, whether David Robinson did in fact act outside the capacity of his employment is a question for the jury. Id. In this case, the trial court gave the jury a very lengthy instruction as to agency. Within that instruction, the trial court informed the jury that “when an agent is engaged to perform certain services for his principal, whatever the agent does to that end or in furtherance of the employment is normally deemed to be an act within the scope of the authority of the agency relationship....” There was ample evidence presented to the jury for it to conclude that David Robinson did in fact act outside the scope of his employment in embezzling the money. The jury simply resolved this issue in favor of the bank, and not the Robinsons. Therefore, as the trial court correctly instructed the jury as to the applicable law in Alabama, we find no error.
III.
The Robinsons also argue that the trial court erred when it admitted into evidence certain promissory notes, deposit slips, and other bank documents that evidenced the Robinsons’ debt to the Bank of Heflin. The Robinsons argue that the evidence was not authenticated by the bank’s witnesses and, therefore, that it should never have been admitted into evidence. However, the Robinsons’ objection to the evidence admitted occurred after almost 50 exhibits had been introduced into evidence. They objected and asked the court to exclude evidence that was already introduced. Objections must be timely made in order to preserve errors for review on appeal. Davis v. Southland Corp., 465 So.2d 397 (Ala.1985); Sanford v. Sanford, 355 So.2d 365 (Ala.1978). Because the Robinsons’ objection came long after the introduction of the evidence, it was not timely made. Therefore, this issue was not preserved for review.
*49 Nonetheless, we find the exhibits to have been admissible. One of the bank’s witnesses, Sue Pentecost, testified that she had conducted an extensive nine-month investigation. She testified that she traced all of the Robinsons’ loans, using the bank documents. Although the Robinsons claim that the documents should not have been admitted, because David Robinson could have altered them for his benefit, Pentecost testified that the majority of the documents used were not prepared by David Robinson. She further testified that she and her investigatory team crosschecked and verified the data on the promissory notes with other documents belonging to the bank. Pentecost identified and described each item of evidence as it was introduced. Although she could not testify that she personally observed the Robinsons execute the notes, the notes and other documents were properly admitted as business records. C. Gamble, Alabama Evidence (3rd ed. 1977).
IV.
The Robinsons argue that the trial court erred when it struck part of their abuse of process counterclaim against the bank. However, the trial court denied the bank’s motion for directed verdict on the abuse of process claim, and it instructed the jury as to abuse of process. Therefore, it appears that part of the abuse of process claim went to the jury. The thrust of the Robin-sons’ argument on this issue appears to be that the trial court did not permit them to introduce evidence of the priority of mortgages as between Home Federal and the bank. They further argue that the bank should have applied the proceeds received from Home Federal to their debts, and thus, wrongfully instigated foreclosure. This argument is nothing more than a restatement of the argument dealt with in Part I of this opinion, and we have resolved that argument against the Robinsons.
V.
As to their last issue, the Robinsons argue that the trial court erroneously granted the bank’s motion in limine that prevented the Robinsons from introducing evidence concerning the transactions and dealings between Home Federal and the bank. As previously discussed, in Part I, that information was not relevant to either party’s claims. Therefore, no error resulted from the actions of the trial court.
For the reasons set forth, the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, SHORES and STEAGALL, JJ., concur.